LANGENSTEIN ET AL. v. REYNAUD

———

(April 7, 1930. Opinion and Decree.)

———

J. Kenton Bailey, of New Orleans, attorney for plaintiffs, appellees.

John C. Hollingsworth, Dart & Dart and John Dart, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit for damages brought by two ·sisters of the deceased as the result of his death from injuries sustained when the defendant's Lincoln sedan struck the deceased at the intersection of South Claiborne avenue and Upperline streets in this city on December 6, 1928, about 6:30 p. m. Defendant denied liability and the case was tried before the district court without the intervention of a jury, and, from a judgment in favor of the plaintiffs in the sum of $4,596.35, defendant has appealed.

The petition alleges that the defendant was at fault in the following respects:

(1) That the defendant was negligent and careless in failing to keep a proper lookout in driving his car.

(2) In operating his automobile at a rate of speed in excess of the speed limit,

as fixed and provided by the traffic ordinance of the city of New Orleans.

(3) That he was operating his automobile in a reckless and careless manner as a result of drinking intoxicating liquor.

(4) In failing to stop his automobile after having run down the deceased, and fleeing from the scene of the accident in violation of the ordinance of the city of New Orleans and the laws of the state of Louisiana.

The petition alleges in the alternative that the defendant had the last clear chance of avoiding the accident.

The defendant admitted that the accident occurred but denied the charges that he was at fault, and averred that it was caused solely and entirely by the fault and carelessness of the deceased, and, in the alternative, pleaded contributory negligence. Defendant denied that he had the last clear chance of avoiding the accident, but admitted that he did not stop at the scene of the accident after having knocked down the deceased.

The record shows that South Claiborne avenue is a wide street, measuring 191 feet, 10 inches, and two lines in width with a neutral ground in the center measuring 107 feet in width with two 30-foot roadways on each side and with two 12-foot sidewalks. This avenue runs from uptown to downtown, the lake side of the roadway being a one way street in the uptown direction, and the river side roadway, a one way street in the downtown direction. Upperline street intersects South Claiborne avenue and runs from the river to the lake. At the point where Upperline intersects South Claiborne avenue, the avenue turns sharply towards the lake, thus causing a very sharp bend in the roadway on the lake side.

On the day of the accident, at dusk, the defendant was driving a five passenger Lincoln sedan, going uptown at about 25 or 30 miles per hour. It appears that the deceased attempted to cross from the river side of South Claiborne avenue to the lake side at the intersection of Upperline street. The record shows that there is a boardwalk that crosses the neutral ground of South Claiborne avenue at Upperline street, located on the downtown side of the neutral ground. The deceased was walking on the uptown side of the neutral ground and had walked approximately 16 feet into the roadway on the lake side of South Claiborne avenue when defendant's car struck him with the right front headlight and fender, knocking him up in the air and hurling him violently to the pavement. The defendant did not stop his car but continued on up South Claiborne avenue six or seven blocks where he was stopped by a traffic officer who witnessed the accident and who gave chase and overtook the defendant at State street. After the officer left the scene of the accident to give chase to the defendant's automobile which was going up South Claiborne street, another automobile, going in the same direction, ran over the lower part of the body of the deceased who was lying in about the middle of the street with his head towards the neutral ground and his feet towards the lake sidewalk. An ambulance was summoned and the deceased was brought to the Charity Hospital and later removed to the Baptist Hospital where he died December 10, 1928.

The defendant was returned to the scene of the accident but could give no good reason why he ran away. The traffic officer testified that he saw the accident

while standing on the lake downtown corner of Upperline and South Claiborne streets; that as soon as he saw the automobile strike the old man that he rushed out into the street to the deceased's rescue and kept waving his hand at the driver to stop; that the driver seemed to pull over towards the curb when he reached down to pick up the old man, but, after pulling into the curb, the driver pulled away from the curb and continued on his way uptown; that he arrested the defendant and charged him with violating the provisions of Act No. 296 of 1928, relative to reckless driving, causing injuries and fleeing from the scene of the accident; that when he said to the defendant, "It looks like you have been drinking" the defendant said, "No I did not have anything but a bottle of homebrew." The officer further said, "If he would have been drinking I would have charged him with being drunk but he admitted having a bottle of homebrew."

The defendant was placed on the stand for the purpose of cross-examination under the act of 1928 and testified that he was a dentist, age 30 years, living at Lutcher, St. James parish, La., and had come to the city of New Orleans and was on his way uptown to see his sister after which it was his intention to call upon his fiancee; that it was about dusk and that he was driving about 25 or 27 miles per hour and that he had driven on South Claiborne street several times, but would not say that he was familiar with the particular locality; that, due to the severe curve in the roadway, his lights were focused on the neutral ground and, therefore, he was unable to see anything to the right side of his car; that he did see and realize that he struck something, but could not tell what it was and that he did not stop at the scene of the accident and was arrested at State street by the officer; that he did say to the officer that he had drunk a bottle of home-brew, and that he could not assign any reason why he had run away from the scene of the accident.

There are two blue prints of the locus in quo showing that there is a sharp curve in the roadway at the corner in question. There is expert testimony as to how far to the right a motorist would be able to see when turning sharply to the right, due to the fact that the rays of the lights of the automobile would extend forward and not around the curve. This evidence is conflicting in some respects but we are satisfied that a motorist, keeping a proper lookout in negotiating the curve in question, with bright electric headlights on an automobile, would be able to see a sufficient distance in front of him in order to bring his car to a stop, while running at 25 or 30 miles per hour.

The record convinces us that the defendant was either not keeping a proper lookout where he was driving, or was operating his car in a reckless and careless manner in utter disregard of the rights of the deceased pedestrian at the crossing. In short the record convinces us that the defendant was clearly at fault. Frierson vs. Shreveport Grocery Co., 3 La. App. 44.

The next matter to be decided is whether the deceased was guilty of contributory negligence. Traffic Officer Credo, who witnessed the accident, testified that the defendant's automobile was about 150 feet from the deceased at the time he started to cross the roadway and that he had negotiated more than one-half of the roadway at the time defendant struck him; that there is only one street light which is situated on the river downtown corner of the intersection of these two streets; that the defendant was driving his auto-

mobile at a rate of speed about 25 or 30 miles per hour, giving defendant the benefit of the doubt.

We haven't the benefit of the testimony of the deceased, as he died four days after the accident, so we do not know whether he saw the automobile, or kept it under observation as it approached him, or whether he gave the pedestrian signal by raising his hand which would have given him the right of way at the intersection over the defendant's automobile, as provided by paragraph 2, article 7, p. 32, Ordinance 7490, C. C. S. But conceding that the deceased was guilty of contributory negligence, which we seriously doubt because a pedestrian passing at a street intersection has a right of assuming that the operator of a motor vehicle approaching 150 feet away, at a speed of 25 or 30 miles per hour with bright electric headlights on his car, will keep a proper lookout and use due precaution and care in regard to pedestrians using the street intersection, nevertheless we find that the defendant had the last clear chance of avoiding the accident, but failed to do so.

The record shows that the deceased had negotiated more than one-half of the intersection and, therefore, the defendant, if he had continued to his left, would have had a clear space of 16 or 17 feet to pass to the rear of the deceased. It would have been much easier for him to pass to the rear of the deceased, for it would tend to lessen the severity of the curve by going to the left-hand or outer portion of the curve. This is particularly true in view of the fact that the right front headlight and fender were the parts of the car that struck the deceased, and, therefore, the defendant by simply slightly pulling his car to the left would have entirely avoided striking the deceased.

The defendant's conduct in fleeing from the scene of the accident after he struck the deceased and knocked him to the pavement, after being signaled by the police officer to stop and at first obeying the officer by pulling towards the curb and then continuing on his way, shows that the defendant felt that he was entirely to blame for the accident. As we said in the case of Vuillemot vs. Claverie & Co., Inc., 12 La. App. 236, 125 So. 168, 169.

"If he had been keeping a proper lookout, surely he would have noticed that the truck struck the young lady with its front fender. If he was not keeping a proper lookout, he was negligent. If he did know that he struck the young lady and did not stop, then his action in attempting to escape was tantamount to an admission of guilt. We have therefore come to the conclusion that, although the evidence as to the facts of the accident is very meager, there is sufficient in the record to warrant the finding that the young day was killed by a truck and that the driver of the truck was at fault."

The defendant moreover violated both the provisions of the Traffic Ordinance 7490 of the city of New Orleans, and paragraph (a), of section 31, of Act 296 of 1928, in fleeing from the scene of the accident. There is a uniform principle of the law of evidence in criminal cases that fleeing from the scene of a crime is strong evidence of the guilt of the accused in spite of the fact that the Constitution of this state provides that the accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt.

In the present case the defendant is an educated man and a doctor of dentistry. He certainly knew in his conscience that he was doing wrong in fleeing from the scene of the accident; leaving his victim prostrate in the street to the danger of

being further injured or probably killed by other automobiles. Whatever injury the deceased may have suffered as a result of the second automobile running over the lower part of his body is certainly attributable to the defendant, because if he had stopped, as the law directed him to do, the deceased would have been removed to a place of safety where he would not have been further injured, and probably his life saved.

Counsel for the defendant has referred us to the case of Neville vs. Postal Telegraph Co., 13 La. App. 76, 126 So. 720. We do not believe that case is controlling here for two reasons. First, the plaintiff in that case testified that she saw an automobile approaching about one-half block away but did not again look in the direction from which it was coming. We held that she was guilty of contributory negligence in not keeping the automobile under observation as it approached her, and in walking across in front of it without paying any further attention to it. We also found that the operator of the motorcycle which came from the rear of the automobile when he discovered the presence of plaintiff, did not have the last clear chance of avoiding the accident.

As to the quantum of damages it appears that the deceased was 63 years of age, was in good health and lived with his two sisters, who are the plaintiffs in this case, for a number of years; that they received support from him and that he assisted in operating a small dairy until about six months before the time of his death, at which time the cows were not giving any milk and for that reason the dairy was temporarily closed. They testified that he was contributing $50 per month to their support. They further testified that he was a kind and loving brother who looked after and protected them. The plaintiffs have real estate but it is very heavily incumbered and the revenues are just about equal to the interest that is paid on the outstanding mortgage and paving liens.

The deceased suffered a fracture of the skull, crushed liver and intestines, and an enormous hemorrhage of the abdominal wall. He was in a state of coma from the time of the accident until he died, but one of his sisters testified that he seemed to recognize her. Defendant contends that the deceased did not suffer any pains, as he was in a state of coma from the time he was injured until he died and therefore that item should not be considered. In the case of Crisman vs. Shreveport Belt Railway Co., 110 La. 640, 34 So. 718, 62 L. R. A. 747, it was held in substance that a man with his head crushed and one leg run over but was heard to utter an exclamation, and who, during the four hours in which he lived, was heard to sigh and grunt though unconscious the entire time, is held to have had a sense of feeling and to have endured pain for which damages to his heir may be accorded.

The deceased had a life expectancy of 10 years according to the American table of mortality.

The funeral bill, doctors' bill, etc., amounted to the sum of $596.50, which is admitted by defendant to be correct and was, therefore, allowed.

One of the plaintiffs is a widow, age 83 years and the other is a femme sole, age 63 years. The judge a quo who tried the case allowed $2,000 each to the plaintiffs. Plaintiffs have answered the appeal, and asked that this amount be increased. We are of the opinion that the award is reasonable.

For the reasons assigned, the judgment appealed from is affirmed.