### No. 875

### First Circuit

### GUILLOT v. BATON ROUGE YELLOW CAB CO., INC., ET AL.

(December 8, 1931. Opinion and Decree.)

Chas. A. Holcombe, of Baton Rouge, attorney for plaintiff, appellee.

Jess Johnson, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. Plaintiff was struck by an auto on North Boulevard street in the city of Baton Rouge, at night, about 8:30, August 29, 1930.

He is suing defendant company and the Hartford Accident & Indemnity Company for $5,000 in damages for the injuries which resulted from the collision.

North Boulevard runs east and west through the city of Baton Rouge. It is thirty-five feet wide from curb to curb. There is an old car track about the center of the street where the collision occurred. The south-side sidewalk is seventeen feet from the south rail of the car track, and the sidewalk on the north is twelve feet from the north rail.

In his petition, plaintiff alleged that he had been struck by the auto near the south rail of the street car track. In his testimony he said he had made two steps, about four feet, from the south-side sidewalk when he was run over.

It was overwhelmingly and unquestionably shown that the collision occurred near the south rail of the car track or between the two rails. It is therefore plain that plaintiff, by some unaccountable way, fell into an error in saying the accident had occurred four feet from the sidewalk on the south side of North Boulevard street.

The defendant company, on the other hand, alleged as a defense in its answer that plaintiff had been struck by the auto as he dashed from behind a car which was going east on the south side of North Boulevard; plaintiff running at the time across that street. The auto which ran over plaintiff was being driven at the time by Carl Hudson, an employee of defendant company. His testimony is that he had passed this car going east before he reached the point where the accident occurred; and it is therefore evident that plaintiff did not dash behind that car into the pathway of the auto.

Plaintiff and Verrett drove to North Boulevard in Verrett's car, which was parked on the south side of that street. Verrett was driving. Plaintiff got off on the right-hand side on the sidewalk and went around the back of the car with the intention of going north across North Boulevard.

His testimony is, that he started to walk across to the north side of that street. He said he looked north, east, and west before

proceeding across, and that there were then no cars on North Boulevard, except that of defendant company which Hudson was driving from the east, and that it was then half a block away. The record shows that the auto was then at approximately that distance, that there was no other car in sight, and there is no evidence that plaintiff had not looked in every direction before he started to cross the street.

In going across, he had, under the existing conditions, the right to assume that the drivers of automobiles would exercise reasonable care to avoid injuring him, and that they would observe the law. Berry on Automobiles (4th Ed.) p. 331, par. 326; Cox v. Reynolds (Mo. App.) 18 S. W. (2d) 575-578.

Verrett's car was parked facing the east. Verrett was in his car, and says he saw when plaintiff was "hit," and was then on the south side of the old car track.

According to the testimony of Verrett and plaintiff, the latter walked across the street and was not running when struck, as testified to by Hudson, driver of the auto, and Danna, a witness for defendant company. Counsel for defendant says in his brief that counsel for plaintiff "caught" Danna on one or two questions, but from reading of the testimony it is easy to see that his answers were forced by the adroit and rapid questioning. That Danna was "caught up" on some of the questions we find to be true, but not as to his answers being the result of rapid or skillful interrogatories. The fact is that his testimony is so conflicting and unsatisfactory that it must, as a whole, be considered of no probative value.

In the answer of defendant company, above referred to, it is alleged that plaintiff had dashed from behind a car going east and was running across North Boulevard when struck. The proof shows, as before stated, that the car going east had passed the auto Hudson was driving before it had reached the point of collision, and consequently there had been no such dashing by plaintiff from behind that car. There is left only the testimony of Hudson to the effect that plaintiff was running across the street at the time, as against that of plaintiff and of Verrett who says he was walking and not running. Plaintiff was crossing to the north side of Boulevard street to buy some eggs for his supper. There is nothing in such an errand that we can see which would have impelled him to unusual hurry.

Counsel for defendant, we presume, to find support for his theory that plaintiff was hurrying across Boulevard street, refers to the fact that the weather was rainy. The proof is that it was "misty" or slightly rainy. Such weather in the hot days of August would not incline any one, we do not think, to hurry for the purpose of negotiating a street thirty-five feet wide.

Plaintiff says that when he saw the auto coming on him he attempted to step southward to get out of its way, but that the driver veered to his left, striking him with the left fender. Hudson, the driver, says he veered to his right, and not to his left. Whether he turned to his left or his right, it is certain that he struck plaintiff, causing the damage.

The real, vital issue in this case is as to whether Hudson could or should have seen plaintiff in time to avoid the accident. Hudson says he was traveling at about eighteen miles an hour. Plaintiff and Verrett estimated his speed at about twenty-five, thirty, or thirty-five miles an hour.

Verrett says Hudson's car went about thirty-five feet beyond the point of collision before stopping. McLaughlin, another witness for plaintiff, says he got to the point of collision immediately after the accident, and that the auto had traveled about that distance. Other witnesses testified that the body of plaintiff was lying, after the impact, a few feet from the hind wheels of Hudson's auto.

Considerable doubt was thrown around that issue, and it is therefore difficult to say with satisfying certainty that Hudson was traveling at an excessive speed because of the distance his auto had gone after the impact. It is, however, clearly shown and beyond dispute that the lights on Hudson's car were burning at the time and that there was no obstacle or obstruction of whatsoever character to interfere with Hudson's vision.

In the case of Norwood v. Bahm, 14 La. App. on rehearing, page 269, 129 So. 183, 184, we had occasion to pass on the rule governing in this state on the last clear chance doctrine. In that case we referred to the general rule in many jurisdictions which require the person injured to prove, in order to recover, that defendant "after seeing the danger could by the exercise of ordinary care, have avoided the injury."

In referring to this generally accepted rule, 29 Cyc. 531, says, as we said in the opinion, as follows:

"But in some other jurisdictions it is extended to cases where defendant might have discovered the peril by the exercise of reasonable care or has . neglected the most ordinary caution in failing to do so."

We held that the latter part of that rule, above quoted, had been adopted by our Supreme Court in the case of Tyler v. Gulf, C. & S. F. Ry. Co., 143 La. 178, 78 So. 438, where the court, after stating the generally accepted rule hereinabove cited, added the following:

"If defendant did not see the danger, it must appear that plaintiff has clearly shown that defendant might by the exercise of ordinary care have seen the danger in time to avoid the injury."

The Norwood v. Bahm case is referred to, not because the facts are similar to those here presented, but because the doctrine there recognized is equally applicable, and must be applied in the instant case.

Here Hudson says when he first saw plaintiff he was then about six feet from his car, that he applied the brakes, and immediately veered to the north to avoid the accident, but that it was too late, and was unavoidable. Hudson, beyond question, had an open and unobstructed view ahead of him, and could have unquestionably seen plaintiff in time to avert the collision, had he exercised ordinary care. It is proved by his own lips that he never looked "at all" to his left as he was driving the car at that time. He repeatedly states that he was looking ahead, it is doubtful from his testimony if he looked to his right, but absolutely certain that he did not cast a glance to his left, the direction from which plaintiff was coming.

The proof here is that plaintiff saw the danger in the approaching car, and attempted to step backward to escape the collision, but failed. Even if he had not seen the danger, defendant is responsible under the rule of the last clear chance, as recognized in Tyler v. Gulf, C. & S. F. Ry. Co., 143 La. 178, 78 So. 438, because defendant, through Hudson, employee, "might by the exercise of ordinary care have seen the danger in time to avoid the injury."

In the case of Lanphier v. D'Antoni, 14 La. App. 441, 131 So. 628, 629, the court, in referring to the facts of the case, said:

"Mrs. Lanphier testified that at the time she started to cross the intersection defendant's car was a full city block distant, or about two hundred feet. Defendant, who was driving his own car at the time, testified that he did not see Mrs. Lanphier until within five feet, or just before striking her. The trial judge concluded that defendant was at fault because of his failure to avoid the accident, the plaintiff being within his vision when there was ample time to stop his car before striking her, whether he saw her or not."

Defendant was held liable under the rule of the last clear chance. The facts are similar in every essential particular in this case to those in the Lanphier case, and the same rule should apply.

## QUANTUM

Plaintiff was knocked unconscious by the impact, and, when Dr. Watson reached the hospital in Baton Rouge where he, was carried, he found plaintiff in a semi-conscious condition. An X-ray examination disclosed that he had two fractures of the skull. He was bleeding from the ear, had a cut on the chin, an ear cut through, a bruise on the leg, and one on the shoulder, one arm cut, and was vomiting bloody fluid. Paralysis resulted on one side of his face for a while, which Dr. Watson believed had passed off. The doctor said if the nerves or organ of the ear were affected plaintiff would be permanently deaf.

Another physician, Dr. Weis, examined him twice. The test of his hearing, he says, showed he had received a very severe injury to the organ of hearing, or to the nerve of hearing. The fracture of his skull, this doctor said, had caused a permanent impairment of his hearing.

Plaintiff says his hearing was good before the injury, and his wife so testifies.

Vernon Parenton, a barber, testified he had, while shaving plaintiff prior to the accident, noticed "he was slightly hard of hearing." The barber admitted his hearing was much worse now than it was before the accident, saying: "He can't hardly hear now." The record itself shows that, when plaintiff was testifying, the questions put to him had to be repeated, and that he had to be addressed in a "loud voice." The evidence shows, as we read the record, that his hearing has been permanently impaired by the injury.

Plaintiff was 2 weeks in the hospital, in bed 6 weeks, and confined to his home 45 days; suffered pains 8 weeks.

Prior to the injury, he was working for the Standard Oil Company, and went back there to resume his employment. He was found, after physical examination, to be unfit, and lost his job. He is now driving a truck for a living, and says he is a nervous wreck. He paid or incurred obligations over $300 for medical attention and services.

The lower court granted him $2,000 in damages. We find this sum inadequate to compensate him for the injuries he has received, the sufferings he has undergone, and the expenses he has incurred. The amount allowed will be increased to the sum of $3,000.

It is therefore ordered, adjudged, and decreed that the judgment be, and is hereby, amended by increasing the amount decreed below to the sum of $3,000, that plaintiff have judgment against defendants for said increased amount, and, as thus amended, the judgment be affirmed.