## ROTTMAN v. BEVERLY et al. *
### No. 1445.

Court of Appeal of Louisiana. First Circuit.
June 14, 1935.

Wm. H. Talbot, of New Orleans, for appellants.

Rownd & Warner, of Hammond, for appellee.

DORE, Judge.

This is an appeal from a judgment in favor of plaintiff and against the defendants to the amount of $4,240, for injuries caused to the plaintiff as the result of an automobile accident.

Beverly, one of the defendants, was driving his own car, being at the time in the scope of his duties as a traveling salesman for the other defendant, Colgate-Palm Olive-Peete Company; the car was a Plymouth sedan, bought three months previous to the accident. In the automobile with Beverly was another salesman of the same company, named Holloway. Beverly and his companion salesman were traveling from New Orleans towards Hammond, with Baton Rouge as their destination. The accident occurred about one mile south of Hammond. The highway is a paved highway, having a concrete slab of 18 feet, with shoulders on each side of about 5 feet; the highway is straight and level for at least one and one-half mile from the point of accident each way, running north and south. At the time of the accident, this highway was being used as a detour from Baton Rouge to New Orleans, the Air Line being closed; it being the best way of travel between the two cities, besides being used in its regular manner from Jackson, Miss., to New Orleans; it was therefore heavily traveled.

Mrs. Annie Rottman, the plaintiff, lives adjoining this highway some 30 or 40 feet therefrom, on the west side, about two miles from the scene of the accident, and, as testified and admitted by herself, knew that this was heavily traveled by automobiles at a fast rate of speed, and, in her language, "some times three abreast." She was a pedestrian on the highway between Ponchatoula and Hammond in the northern direction, the same direction as defendant Beverly was traveling, and, in accordance with her own testimony, was going to Hammond, walking in accordance with the rules of roads as fixed by Act No. 21 of 1932; that is, to the left.

The plaintiff was struck by the defendant's automobile at a point near or at a crossroad called the "Minnesota Park road," about one mile south of Hammond, during the morning of February 20, 1933, say at about 10 a. m. The exact position on the highway at the time she was struck is the point in dispute between the parties, and forms the vital issue in the case.

Plaintiff claims that she was on the shoulder on the east side of the pavement (traveling contrary to provisions of Act No. 21 of 1932, requiring pedestrians to travel on the left hand side), near a mail box right next to the Minnesota Park road, and which mail box was some 8 feet from the east line of the concrete slab, and it was while she was attempting to touch the mail box that she was struck by the defendant's car from the rear.

*Rehearing denied June 29, 1935. Writ of error granted by Supreme Court Aug. 30, 1935.

74

The defendant Beverly, on the other hand, contends that Mrs. Rottman was crossing the pavement from a place on the west side of the pavement known as Boudier's Filling Station, walking diagonally across the pavement, without looking for on-coming traffic; she well knowing, as heretofore stated, that the highway was heavily traveled. That despite his efforts to pass to the right of her, after warning by blowing his horn when he saw that he could not stop her in her direction or stop his car in time, he swerved to his left with the intention of passing her to the rear, and was unable to avoid striking her; the impact taking place near the center line of the pavement, however, past the mail box.

Mrs. Rottman stated that she had crossed from the west side, on which side she resided, her legal side to be on, as provided for by rule 11 (d) of section 3 of Act No. 21 of 1932, over to the east side at a point near an Italian's place about a quarter of a mile from the scene of the accident; she further states that she did this on account of some mud on the shoulders on the west side recently thrown by workmen; that she never heard the car coming, nor the blowing of any horn, regardless of the fact, she says, that her hearing was perfect, and that, as she reached the mail box, some 4 feet from the eastern end of the pavement, in the act of putting her hand on the mail box, she was struck from the rear, and remembers nothing thereafter.

In corroboration of her testimony, she introduced one Edward Benson and his mother, to the effect that she was struck on the east side on the pavement. At first, Edward Benson testified that he was walking on the east side of the pavement in a southerly direction coming from Hammond going south, and that Mrs. Rottman was in plain view of him, regardless of the fact that he was some distance away, and that Mrs. Rottman was walking on the east side of the pavement, and that the accident happened as detailed by her. His testimony was shakened by the testimony of his mother, Mrs. Marie Benson, to the effect that her son Edward had already been to Hammond and had returned and was in her field talking or looking on with workmen, and particularly a friend, Ernest, at the time of the accident. The defendant was adroit in crossing the witnesses, Edward Benson and his mother. Court adjourned for recess until 1:30 p.

m., and, after recess, plaintiff, realizing the contradiction, sought to have Edward Benson correct his testimony to show that he was merely in the attempt to cross over the field at the time of the accident. Mrs. Benson's testimony does not impress us, in that she speaks of being in a certain room and saw the accident through a window, and immediately thereafter she places herself in the kitchen near her kitchen stove. However, if she did see the accident as detailed by her, she certainly acted differently from all human beings. She stated that she was called to the scene of the accident by her son Edward, and did nothing until so called. The testimony of these two witnesses is very weak, even so that the trial judge gave it no consideration, as he based his decision on the testimony of the highway officer who reached the scene of the accident some fifteen to thirty minutes thereafter, and after Mrs. Rottman had been removed from the place she had fallen to a point on the concrete slab.

Mr. Sharp, the highway officer, offered by the plaintiff in corroboration of her testimony, does not do so; on the contrary, he is more favorable to defendant's side of the case. He only arrived after the accident and after she had been removed from where she had fallen. His testimony is only relevant to show the skidmarks. He states that they showed that Beverly's car had skidded some 20 to 25 steps in an angular direction to the east, and that at one point two wheels had actually left the pavement and gone to the shoulder. This is directly in line with defendant's testimony that he tried first, after applying his brakes lightly and blowing his horn, to go to the east in front of Mrs. Rottman and did leave the pavement, and, when he saw he could not avoid striking Mrs. Rottman, then attempted to pass behind her to his left. To do this, Beverly had to come back on the pavement, and, in so doing, he applied his brakes so tightly that in skidding, the car turned around completely and was facing south when stopped. Sharp, the officer, testified that he tested the brakes of the said car immediately after the accident, and that the brakes were in perfect condition, causing the four wheels to skid as evidenced by the marks on the highway.

Beverly and Holloway both testify most positively that Mrs. Rottman was on the west side of the highway when they saw her leave from Boudier's Filling Station to go

across the pavement. Their car was some 50 to 60 feet away from her; that they were traveling at a rate of speed of about 45 miles per hour; that Beverly blew the horn and kept his hand on the horn while blowing the same, reducing his speed, and lightly applying his brakes, veering to the right. After perceiving that Mrs. Rottman was bent on continuing diagonally across the pavement, Beverly then applied his brakes and tried to come back to the left in order to pass her in the rear, but did not avoid striking her. Their testimony is to the effect that Mrs. Rottman was struck by the right front fender, and which fact is borne out by the physical fact that it was the right front fender that caused the blow, striking her right side or leg; her right leg receiving the most severe injury. Their testimony is also to the effect that the point was beyond the mail box, or to the north thereof. Their testimony as to Mrs. Rottman's position on the west side of the highway, and leaving to get across the highway, is corroborated by Willie Jackson, a negro ice truck driver, who was stopped at Boudier's Filling Station across the mail boxes at the time, and a disinterested witness who knew none of the parties.

No reason whatsoever has been offered or attempted to be shown to show why Beverly should have applied his brakes prior to striking Mrs. Rottman in accordance with her theory. If she had been where she states she was, there was no reason for Mr. Beverly to have applied his brakes some 40 feet away. But, to the contrary, a reason is apparent for his action as to his side of the case, and which strikes most forcibly.

In addition, it seems to us that, if as Mrs. Rottman says she was struck in the back when she was on the shoulder on the east side of the highway, the impact could hardly have been one between the right front fender of the car and her right leg, which she admits was struck first. That would seem to have been physically impossible.

Act No. 21 of 1932, § 3, Rules of the Road, rule 11, subdivision (d) provides: "Upon approaching any pedestrian who is upon the traveled portion of any highway or road, the driver shall sound a warning, and when the operator's view is obstructed, whether upon approaching or entering a highway or curve in a highway or road, every person operating a motor vehicle shall slow down and give a timely signal with his horn or other device for signaling; provided, that whenever pedestrians are using the highways, they shall be required to walk on their left hand side of the highway as near as possible to the edge thereof, under penalty of being held and regarded as prima facie at fault and responsible for any consequence of his failure so to do and pedestrians crossing highways outside the corporate limits of incorporated cities and towns shall yield the right of way to approaching vehicles."

Applying the above-quoted rule of the road to the case at bar, we find no negligence on behalf of defendant Beverly. He had given the proper signal or warning of his approach, and had reduced his speed. The proximate cause of the accident was Mrs. Rottman's attempt to cross this heavily traveled highway in a careless and negligent manner. Mrs. Rottman was on the west side of the highway, the place she should have been, and a place of safety; she left this position of safety to go across in a diagonal manner on this highly traveled highway without looking and taking proper precautions. It was her duty to yield the right of way. Had she looked, she could have easily seen the on-coming car for a mile or more. The only conclusion we can reach is that she failed to look, which was inexcusable on her part.

The plaintiff in her brief contends that the defendant Beverly had the last clear chance to avert the accident, and for the first time urges the doctrine. She did not plead the same, however, but, to the contrary, defendants urged this as a further defense to plaintiff's action. However, disregarding the fact that she failed to plead the doctrine of "last clear chance," we will briefly consider the same.

Her negligence, as heretofore stated, was inexcusable, and it continued up to the very moment of the accident. Our Supreme Court has repeatedly held that under such circumstances the doctrine of "last clear chance" does not apply. Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651, quoting, with approval, expression in the case of Harrison v. Louisiana Western R. Co., 132 La. 761, 61 So. 782.

The case is a rather pathetic one, and the accident should be regretted, but, of course, that cannot help plaintiff in her suit. The judgment rendered should be

reversed, and her suit dismissed at her costs.

It is ordered that the judgment appealed from be avoided, annulled, and reversed; and that there be judgment herein in favor of defendants and against plaintiff, dismissing her demand at her costs in both courts.

Reversed and rendered.

ELLIOTT, Judge (dissenting).

I think Beverly, defendant, liable in damages to Mrs. Rottman, the plaintiff, on the ground that he had the last clear chance to avoid striking her and did not avail himself of it as he should have done.

The evidence establishing this cause of action was received without objection, and must therefore be taken into account in the proper disposition of the case. The weather was fair, the road straight, and Beverly's view ahead was unobstructed as he drove north on the highway. Mrs. Rottman walked from the western toward the eastern side of the highway at a place which was not a regular crossing and not within the limits of any city, town, or village. Her course was diagonally across the road in such a way and course that her back was turned toward Beverly's on-coming automobile, which was behind her. She had her head down, and according to Beverly he realized that, although he sounded his horn, she had not seen him and did not look back. The situation called for prompt slowing down on the part of Beverly, who was driving at the time 40 or 45 miles an hour. He should have immediately applied the brakes strongly and effectively, so as to be able to stop quickly, if such became necessary in order to prevent running over her in the road. He, instead, chose to go forward without taking the precaution the necessity for which was obvious to his view ahead, taking a chance to miss her, until it was too late and struck her, when, had he timely taken ordinary care, he could have avoided striking her.

He says in his testimony that he first saw her somewhere up about Boudier's Filling Station, and that he at the time was 40 or 50 feet below the station.

Questioned, he said:

"Q. What did you do when you first saw her? A. I started blowing my horn, kept my hand on the horn button and started to put on my brakes slow at first. I thought I could cut in front of her: she had her head down. When I saw I couldn't do that I cut back on the highway on the concrete and struck her about the concrete road just a little past the center slab.

"Q. How far were you from Mrs. Rottman when you applied the brakes? A. At once when I saw her I stepped easy on the brakes, I thought she would see me and stop and when I saw she didn't see me I put them on right fast."

It is plain that Beverly was bound to have seen Mrs. Rottman sooner than he claims to have done if he was looking ahead in the direction he was driving. Holloway, riding in the automobile with Beverly, and seated on the front seat, says (I understand him to mean they) that he saw Mrs. Rottman when she was 60 or 70 yards distant ahead in the road. That Beverly upon seeing her stepped on his brakes lightly, sounded his horn, and when he saw she was not going to stop, he jammed on the brakes, but it was too late to miss her.

"Q. Do you know of anything that would have prevented him from stopping his car? Couldn't he have put his foot on the brake and stopped the car running 40 or 45 miles an hour? A. Yes he could have.

"Q. He didn't do it? A. No."

But suppose Beverly not to have been able to see Mrs. Rottman until she was up about Boudier's Filling Station and he 40 or 50 feet below, he then had time and space, it seems to me, in which to stop or check his speed or turn so as to avoid striking her if he had exercised ordinary care.

In Rogers v. Louisiana Ry. & Nav. Co., 143 La. 58, 78 So. 237, 238, the Supreme Court said: "And his widow can only recover if she can clearly show that the accident might have been avoided by the exercise of ordinary care on the part of the locomotive engineer, after the danger of the situation was, or should have been, by him discovered." The language mentioned was quoted with approval in Tyer v. Gulf, C. & S. F. R. Co., 143 La. 177, 178, page 180, 78 So. 438, and by this court in Norwood v. Bahm, 14 La. App. 261, page 266, 129 So. 183. Kelly v. Ludlum, 9 La. App. 57, 118 So. 781, the court held (one of the judges dissenting on the subject of the care which should be exercised by the driver of an automobile when approaching some one walking

ahead in the highway who has not looked back) as indicated by the syllabus:

"One who walks along a roadway does not have to maintain a lookout for automobiles approaching from his rear."

"The driver of an automobile, when approaching a pedestrian walking in the same direction must not drive so close to the pedestrian that a deviation of two feet by the pedestrian would cause an accident. This danger must be anticipated by the driver."

Alexander v. Standard Coffee Co., 16 La. App. 286, 134 So. 261, was a similar case to the one just mentioned in which the same care was held to be a duty that the driver must observe. As indicated by the syllabus: "Motorist on highway approaching pedestrian from rear should have moderated speed and given warning, where, under circumstances, he should have realized pedestrian might step toward automobile. * * * Truck driver's negligence in approaching pedestrian from rear at too great a speed and in not sounding horn was proximate cause of accident."

In Morgan v. La Rice Milling Co., 8 La. App. 77, in which decedent suddenly started running diagonally across the road, this court by a majority opinion, held that the truck driver in that case was not negligent, but the opinion in the two cases first cited is in harmony with the general rule as appears from Cyclopedia of Automobile Law by Blashfield vol. I, p. 293, Subject, Pedestrian Between Crossings at Other Than Regular Crossings, and Cyclopedia of Automobile Law by Huddy, vol. 5, 6, p. 72 et seq., Subject, Pedestrians Between Crossings, etc. It is, of course, unnecessary to say that there are sudden acts, so unexpected that it is impossible to avoid the consequence of the act. In this instance it was Beverly's duty by the exercise of ordinary care on his part, after seeing Mrs. Rottman walking diagonally across the road ahead of him with her head down and without looking back to indicate that she had heard his horn or approach, to check his speed while he had time and opportunity to the extent that his automobile was under such control as he came up close to her, that he could stop or do whatever was necessary from the standpoint of humanity to avoid striking her. The evidence, I think, plainly shows that instead of doing as he should have done, he kept up his speed until it was too late, thereby placing her life on the chance and hazzard that he might in some way miss her with the result that he struck her and injured her greatly. I think the judgment holding him responsible is correct for the reasons above stated, and that the judgment should be on the grounds stated affirmed. I therefore dissent.