## LANGLEY v. VIGUERIE et al.

### No. 17168.

Court of Appeal of Louisiana. Orleans.

June 12, 1939.

James W. Hopkins and Chas. C. Bass, Jr., both of New Orleans, for appellant.

Robert A. Ainsworth, Jr., of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit for damages for physical injuries sustained by plaintiff as the re-

sult of an accident which occurred about 8:30 p. m., December 22nd, 1937, at the intersection of Sixth Street and St. Charles Avenue, when plaintiff was knocked down by a taxicab owned by the defendant, John Viguerie, and at the time of the accident driven by his employee, Albert Smith. Viguerie and Smith are joined as codefendants and solidary judgment is asked for in the sum of $14,671.95.

There was judgment below in defendants' favor and plaintiff has appealed.

On the night of the accident the plaintiff, Mrs. Mary Neal Langley, a lady sixty-seven years of age, was walking in the direction of her residence, No. 1635 Sixth Street. As she crossed the intersection of St. Charles Avenue and Sixth Street, she was struck by a taxicab and seriously injured. St. Charles Avenue is a wide thoroughfare with 'a neutral ground in the center and a paved vehicular roadway, thirty feet wide, on each side. Mrs. Langley had crossed the river side roadway and the neutral ground and was in the lake side roadway when struck by the taxicab. Exactly how far she had entered the roadway when the taxicab struck her is in dispute, the defendants contending that she had not traversed more than one-half its width and the plaintiff that she had reached a point two-thirds of the distance across.

The driver of the taxicab did not see Mrs. Langley until just before the accident. He contends that his vision was obscured by the presence of another automobile on his left and about a car length in front of him. The speed of the taxicab is variously estimated as being from eighteen to thirty-five miles per hour. Smith estimates his speed at the lower figure and Mrs. Langley at the higher. There were two passengers in the taxicab and they say that he was driving about twenty-three miles per hour. It was raining very hard at the time of the accident and had been for some time prior thereto. There were one or two street lights at the intersection. Smith testified, however, that he did not see but one. When asked how far he could see he pointed to the wall of the courtroom, which was forty-one feet from the witness stand. Mrs. Langley was carrying an umbrella and was attired in dark clothing which, Smith contends, made her presence on the roadway difficult to observe.

Mrs. Langley testified that she looked in the direction of traffic just before crossing the lake side roadway and saw nothing within a city block of the intersection, and that, as she had almost crossed to the far curb, she looked again and saw the taxicab about twenty-five feet away from her; that her first impulse was to endeavor to complete the crossing, but that she stepped back, believing that to be the safer course; that the taxicab, which was making no effort whatever to avoid her, struck her with its right front fender in the region of her hip, throwing her to the ground.

Smith says that Mrs. Langley stepped out from behind the automobile which was to his left and in front of him. This statement, however, is so improbable that it is unbelievable; that Mrs. Langley could have waited for this automobile to pass and then step from behind it into the roadway and reach a point fifteen or twenty feet from the neutral ground, where she was struck by the taxicab, which was only a car length behind the other car and moving at the rate of at least eighteen miles per hour, is impossible. We believe it also most unlikely that Mrs. Langley would step out in front of the automobile and conclude that Mrs. Langley was correct in her statement that there was no automobile in front of the taxicab, which was in the lead of a number of automobiles approaching the intersection. The two passengers in the taxicab were unable to recall whether there was a car to the left and a little ahead of the taxicab or not.

Article V, Sections 2 and 3 (a) of the City Traffic Ordinance, No. 13,702 C. C. S., reads as follows:

"2. Reckless Driving.

"Any person who drives any vehicle upon a highway carelessly and heedlessly in disregard of the rights or safety of others, or without due caution and circumspection, and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

"3. Restrictions as to Speed.

"(a) Any person driving a vehicle shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard for the traffic, surface and width of the street and of any other conditions then existing, and no person shall drive any vehicle at such a speed as to endanger the life, limb, or property of any person."

Whether Smith was driving eighteen miles or thirty-five miles per hour, we believe he was going too fast under the circumstances. In a driving rain, when he could only see about forty-one feet ahead of him and at 8:30 p. m., a speed, which would be moderate under ordinary conditions, would be excessive. If there was a car just ahead of him and to his left, it would further increase the difficulties of the situation and impose greater caution upon Smith. Mrs. Langley had undoubtedly entered the intersection when the taxicab was a considerable distance away. She had the right of way. Article IV, Section 2(a) of the traffic ordinance reads as follows:

"2. Pedestrians' Right of Way.

"(a) The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk, or within any unmarked crosswalk at an intersection, provided pedestrian has started across the street before the vehicle shall have entered the intersection, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals, or at any point where a pedestrian tunnel or overhead crossing has been provided."

We have no difficulty in concluding that Smith was negligent.

In F. Strauss & Son, Inc., v. Childers, La.App., 147 So. 536, '538, we find the following: "An operator of an automobile on a public highway in the nighttime should, and it is his bounden duty to, observe every rule designed to, and which in fact, if observed, does, contribute to the security and safety of travel thereon; and it is required of him, under penalty of responsibility for not doing so, that when his vision is obscured regardless of the cause, that he bring his machine under such control and operate it at such rate of speed that it may be stopped within the distance illuminated by its headlights (within the distance that he can see clearly the road ahead of him); and, if necessary, in the interest of safety to himself and others, bring the car to a dead stop until the emergency confronting him, or the cause of interference with his power of vision, had ceased. A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearness ahead, he does so at his own risk and peril." (Words in parentheses ours)

It is said that Mrs. Langley was guilty of contributory negligence. She looked in the direction of approaching traffic and saw that there were some cars moving toward the intersection, but about one block away, far enough for her to safely cross if the approaching automobiles were carefully and prudently operated in conformity with the traffic ordinance. She did not look again until she saw the lights of the taxicab about twenty-five feet away from her. She was not negligent in this respect. Sweeney v. New Orleans Public Service, Inc., La. App., 184 So. 740; Guillot v. Baton Rouge Yellow Cab Company, 18 La.App. 202, 138 So. 219; Langenstein et al. v. Reynaud, 13 La.App. 272, 127 So. 764.

The question of plaintiff's primary or contributory negligence is unimportant, however, since the last clear chance of avoiding the accident was with the defendant. "Mrs. Lanphier testified that at the time she started to cross the intersection defendant's car was a full city block distant, or about two hundred feet. Defendant, who was driving his own car at the time, testified that he did not see Mrs. Lanphier until within five feet, or just before striking her. The trial judge concluded that defendant was at fault because of his failure to avoid the accident, the plaintiff being within his vision when there was ample time to stop his car before striking her, whether he saw her or not. In other words, the judge a quo held that the question of plaintiff's negligence as the sole, or in the alternative the contributing, cause of the accident, the grounds upon which the case was defended, was unimportant, since the last clear chance of avoiding the accident was with defendant. We are also of that opinion." Lanphier v. D'Antoni, 14 La.App. 441, 131 So. 628, 629.

In Jackson v. Cook, 189 La. 860, 181 So. 195, 197, the Supreme Court said: "The only difference between the Rottman case [Rottman v. Beverly, La.App., 162 So. 73; Id., 183 La. 947, 165 So. 153] and the case presently before us is this: In the Rottman Case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert

the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable."

It does not make any difference whether the plaintiff was fifteen feet in the intersection, as claimed by defendant, or twenty feet, as claimed by the plaintiff. In either case there was ample opportunity for Smith to discern plaintiff's presence at a time when he could, with ordinary care, have avoided the accident. If he had operated his taxicab under the dangerous conditions prevailing, with the care and caution imposed upon him by law, he could and should have avoided striking Mrs. Langley.

Plaintiff sustained a comminuted fracture of the lower third of the fibula and tibula of the right leg. At the time of the trial two efforts had been made by her physician to set the fractures without success, no union of the bones having been obtained. She was in the hospital five or six weeks and incurred an expense for hospitalization, doctors' bills, medicine, et cetera, in the sum of $1,069.20. A third attempt to repair the fractured bones is in contemplation, the alternative being that Mrs. Langley will be obliged to wear a brace and use crutches and walk about with extreme difficulty and pain indefinitely. For all items of damage claimed, we think an allowance of $6,000 would be proper.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment herein in favor of the plaintiff, Mrs. Mary Neal Langley, and against the defendants, John Viguerie and Albert Smith, in solido, in the sum of $6,000, with legal interest from judicial demand, and for all costs.

Reversed.