William L. Broussard brings this suit against Charles R. Hotard for damages for physical injuries alleged to have been sustained as a result of an accident which happened about 4 o'clock a.m. on the morning of October 18, 1937, when the Ford car, *West Page 564 
owned and driven by Hotard, struck Broussard as he was crossing the intersection of Tulane Avenue and S. Cortez Street with the intention of boarding the Tulane Avenue street car going in the direction of Lake Pontchartrain. The charges of negligence imputed to the defendant Hotard are that he failed to maintain a proper lookout, did not have his car under control and did not yield to Broussard the right of way to which, as a pedestrian, he was entitled, and finally, that he failed to blow his horn to signal his approach, all in violation of the traffic ordinance of the City of New Orleans, No. 13,702, C.C.S.
The defendant answered, denying all charges of negligence, and in the alternative, pleading contributory negligence.
There was judgment below in favor of defendant dismissing plaintiff's suit and he has appealed.
Tulane Avenue is a main thoroughfare with a neutral ground in the center on which there are two car tracks, with paved roadways on each side. On the morning of the accident it had been raining and, at the time of the accident, it was misting or drizzling. The street was clear of traffic and, though it was early in the morning, all witnesses agree that the visibility was good.
The defendant testified that he was traveling along Tulane Avenue towards its intersection with Cortez Street, at about twenty miles per hour when there suddenly appeared, about ten feet before him, the plaintiff, Broussard, running across the intersection with his head down, and about a street car's length beyond the pedestrian lane; that when Broussard was about the center of the street, he was struck by the front of his car, there being no chance to avoid him. In other words, Broussard suddenly ran out into the street and in front of his automobile.
Broussard declared that as he reached the corner of Tulane Avenue and S. Cortez Street, he saw a Tulane Avenue Street car at Genois Street, a city block distant from the S. Cortez intersection; that a motor truck was passing at the time and as soon as the truck cleared his path, he entered the street, in the pedestrian lane, signalling to the motorman on the street car which, by that time, was nearer the intersection, by raising his hand; that he was not running because "I had no reason to run, the street car was not close enough for that"; and that as he had almost reached the neutral ground he was struck by Hotard's automobile.
The only eye-witness other than the plaintiff and defendant was Lester Nuss, the motorman on the street car which Broussard intended to board. Nuss testified that as Broussard entered the intersection from the downtown lake corner of Tulane Avenue and S. Cortez Street, with the apparent intention of boarding his car, he was walking and not running and that he was in the pedestrian lane and not beyond it; that when he first saw Broussard he was a block away from the intersection and that the automobile, operated by the defendant, which passed his street car in the block, was traveling between twenty-five and thirty miles per hour when it neared the intersection; that Broussard was struck near the neutral ground and not in the middle of the roadway.
It is apparent that the evidence preponderates to the effect that Broussard entered the intersection in the pedestrian lane of traffic when defendant and his automobile was a considerable distance away and that he plainly had the right of way as established by Article IV, Section 2 (a) of the City Traffic Ordinance No. 13,702 Commission Council Series, which reads as follows: "The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk, or within any unmarked crosswalk, at an intersection, provided pedestrian has started across the street before the vehicle shall have entered the intersection, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals, or at any point where a pedestrian tunnel or overhead crossing has been provided." See Langley v. Viguerie, La.App., 189 So. 606.
Hotard also failed to maintain a proper lookout and did not have his car under proper control. In this respect he violated Article V, Sections 2 and 3 (a) of the Traffic Ordinance.
In Rottman v. Beverly, 183 La. 947, 165 So. 153, 156, the Supreme Court said: "The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger."
In Jackson v. Cook, 189 La. 860, 181 So. 195, 197, it is said: "* * * that the duty of those in charge of motor cars and *West Page 565 
engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
In Gouzien v. Feraci, 2 La.App. 115, in speaking of the driver of an automobile who had knocked down a pedestrian crossing at an intersection, we said: "It was her duty under all conditions, but specially at a street crossing, to look for pedestrians upon her path and to have her automobile under control. Duffy v. Hickey,151 La. 274-279, 91 So. 733; Carroll v. New Orleans Ry. Light Company, 125 La. [898], 903, 51 So. 1029; Shields v. Fairchild,130 La. 648, 58 So. 497; Eichorn v. New Orleans C.R. Light 
Power Company, 112 La. [236], 237, 36 So. 335 [104 Am. St. Rep. 437]."
Broussard was not guilty of contributory negligence. He walked across the intersection at the proper place, having entered it when Hotard's automobile was a considerable distance away, far enough for him to cross in safety if the approaching car had been prudently operated. See Langley v. Viguerie, supra; Sweeney v. New Orleans Public Service, Inc., La.App., 184 So. 740; Guillot v. Baton Rouge Yellow Cab Company, 18 La.App. 202, 138 So. 219; and Langenstein, et al. v. Reynaud, 13 La.App. 272, 127 So. 764.
However that may be, and conceding that Broussard was guilty of contributory negligence, Hotard had the last clear chance of avoiding the accident.
In Langley v. Viguerie, supra [189 So. 608], we said: "The question of plaintiff's primary or contributory negligence is unimportant, however, since the last clear chance of avoiding the accident was with the defendant. `Mrs. Lanphier testified that at the time she started to cross the intersection defendant's car was a full city block distant, or about two hundred feet. Defendant, who was driving his own car at the time, testified that he did not see Mrs. Lanphier until within five feet, or just before striking her. The trial judge concluded that defendant was at fault because of his failure to avoid the accident, the plaintiff being within his vision when there was ample time to stop his car before striking her, whether he saw her or not. In other words, the judge a quo held that the question of plaintiff's negligence as the sole, or in the alternative the contributing, cause of the accident, the grounds upon which the case was defended, was unimportant, since the last clear chance of avoiding the accident was with defendant. We are also of that opinion.' Lanphier v. D'Antoni, 14 La.App. 441, 131 So. 628, 629.
"In Jackson v. Cook, 189 La. 860, 181 So. 195, 197, the Supreme Court said: `The only difference between the Rottman case (Rottman v. Beverly, La.App., 162 So. 73; Id., 183 La. 947, 163 So. 153) and the case presently before us is this: In the Rottman Case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable.'
"It does not make any difference whether the plaintiff was fifteen feet in the intersection, as claimed by defendant, or twenty feet, as claimed by the plaintiff. In either case there was ample opportunity for Smith to discern plaintiff's presence at a time when he could, with ordinary care, have avoided the accident. If he had operated his taxicab under the dangerous conditions prevailing, with the care and caution imposed upon him by law, he could and should have avoided striking Mrs. Langlay."
Broussard was seventy years of age at the time of the accident. He sustained a comminuted fracture of the upper end of the left tibia, a comminuted fracture of the left fibula and a compressed fracture of the second cervical vertebrae, a fracture of the right wrist and multiple contusions and brush burns. These injuries necessitated the use of complicated apparatus involving *West Page 566 
extreme discomfort for some months after the accident and, of course, considerable suffering. At the date of the trial, thirteen months after the accident, plaintiff was still using crutches and confined to the hospital.
Dr. Paul E. Walker, plaintiff's physician, testified that Broussard will never be able to return to work.
At the time of his injury, the plaintiff was earning $100 per month. At the time of the trial he had lost $1,200 in wages.
In Langley v. Viguerie, supra, the plaintiff sustained a comminuted fracture of the lower third of the fibula and tibia of the right leg, with two unsuccessful efforts having been made, up to the time of the trial, to set the fractures, and a third attempt to set the bones was then in contemplation, with plaintiff being faced with the alternative of using a brace and crutches indefinitely. There we awarded $6,000, over $1,000 of which was for medical expenses.
In Bacon v. New Orleans Public Service, Inc., 18 La.App. 96, 137 So. 213, 218, 866, the injured person suffered a fracture of the femur and a compound fracture of the tibia and fibula of the right leg, and was confined to bed for a year and was required to use crutches for two years. His injury resulted in the shortening of his leg by 5/8 of an inch. In that case the injured party was a boy fourteen years old. We said: "In the light of the jurisprudence of this state, we believe the sum of $10,000 awarded plaintiff is excessive, and should be reduced to the sum of $6,000. Hebert v. Kingston Lumber Company, 126 La. 775, 52 So. 1021; White v. Nutriline Milling Company, 133 La. 870, 63 So. 385; Adams v. [S.H.] Bollinger [ Co.], 141 La. 493, 75 So. 218; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A.L.R. 1194."
In the case at bar plaintiff seeks recovery of $11,200, which amount includes an item of $1,200 for loss of wages. We believe that, under the jurisprudence, an allowance of $5,500 for all items of damages claimed would be proper.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment herein in favor of the plaintiff, William L. Broussard, and against the defendant, Charles R. Hotard, in the sum of $5,500, with legal interest from judicial demand and for all costs.
Reversed.