Jake Cuccia claiming $114.03 for medical expenses incurred by him and $18,516 as damages for physical injuries on behalf of his minor daughter, Joyce Cuccia, brought this suit against Wilkes B. Walker, White Top Cabs, Inc., Walker's employer, and the Independent Cab Operators' Association, the insurance carrier of the last named defendant, alleging that his daughter was seriously injured when a White Top Cab, negligently driven by Walker in the course of his employment, ran into her just after she had alighted from a street car in the intersection of Magazine and Erato Streets, at about 8:30 p.m. on the night of June 16, 1939. Walker is said to have been at fault because of excessive speed, failure to maintain a proper lookout and proper control of his cab and because he failed to slow down for the intersection of Erato Street and, finally, because he attempted to pass a stationary street car when it was discharging passengers by moving out of the line of traffic which had been halted behind the street car.
The defendants denied that Walker was guilty of any neglience and ascribe the accident to the fault of Joyce Cuccia exclusively, averring that she suddenly and without warning dashed out in front of the taxicab and, in the alternative that she was guilty of contributory negligence.
From a judgment below in favor of Jake Cuccia in the sum of $114.03 and for $500 *Page 359 
for the use and benefit of his daughter, Joyce, defendants have appealed to this Court. Plaintiff has answered the appeal asking that the judgment be increased to the amount sued for.
Magazine Street at the point where the accident happened, is a one-way paved thoroughfare, with traffic moving towards "uptown" or in the direction in which the street car was going. There is no neutral ground on Magazine Street, consequently, when a passenger alights from the car he finds himself directly in the traffic lane. The street car stops at the Erato Street intersection for the purpose of discharging passengers at the near or "downtown" side. Miss Cuccia stepped down from the street car at its front end and as it moved forward she started towards the rear of the car in order to cross the street behind it and reach her home which was located on the downtown lefthand or riverside corner of Magazine and Erato Streets. An automobile which had been following the street car at the head of the line of traffic stopped in order to permit her to cross the street.
Miss Cuccia testified that she looked in the direction of traffic and saw no moving vehicle, whereupon she started across walking very rapidly because of the drizzling rain which was falling; that as she reached a point approximately in the center of Magazine Street she saw the lights of the taxicab and tried but did not succeed in avoiding it. The taxicab, she says, struck her as she reached for the handle of an automobile parked parallel with the riverside curb of the Magazine Street banquette. She does not remember anything further about the accident because, as she explains she became unconscious and did not recover until sometime later when she was in the Charity Hospital.
Mr. and Mrs. William F. White, Oscar J. Petrowsky and John Wilson Wirth, eyewitnesses to the accident testifying on behalf of plaintiff, declared, in substantial agreement that after Miss Cuccia started to cross the street an automobile, directly behind the street car, stopped in order to allow her to pass; that Miss Cuccia proceeded across and as she reached a point near the Magazine Street curb she was struck by the left front portion of the taxicab, which had swung out from the line of traffic toward the left; that the taxicab was traveling at between thirty and forty miles per hour and that while it struck Miss Cuccia fifteen or twenty feet from the intersection, it hurled her through the air by the force of the impact from that point to the intersection; that the cab proceeded across the intersection before coming to a stop.
Sam Weston, another witness for the plaintiff, testified that he was driving his automobile in the center of Magazine Street in the line of traffic behind the street car, and that as he reached a point midway between Clio and Erato Streets, the taxicab, running at about forty miles per hour, passed him on the left; that he saw a woman crossing the street and saw the street car stopped ahead, but did not see the cab strike Miss Cuccia because his vision was obstructed by the taxicab.
As opposed to this testimony Walker, the operator of the taxicab, declared that he was traveling at about ten or fifteen miles per hour and that Miss Cuccia ran out in front of his cab at a time when he was unable to prevent the accident, though he jammed on his brakes; that in his opinion he did not hit Miss Cuccia at all, the accident being due to her stumbling on the edge of the curbing and injuring herself. He did admit, however, that he picked Miss Cuccia up and brought her to the Charity Hospital and made a report of this circumstance to his company and the police, in which he stated that he had had an accident.
Dr. L.P. Hite, testifying for defendant, stated that he was driving his car behind the street car and that he stopped when the street car stopped and that Miss Cuccia walked in front of the taxicab and that he saw the taxicab stop suddenly and he believed that it had missed her. A.L. Pereira, a passenger in the Hite car, corroborated Dr. Hite.
It is apparent that the evidence preponderates in favor of Miss Cuccia and is to the effect that after she left the street car she crossed behind it first looking in the direction of traffic, and that when she had nearly completed the crossing she was struck by the taxicab which was running between thirty and forty miles per hour; that the taxicab swung out from behind the stopped line of traffic and was, therefore, not visible to Miss Cuccia as she started across the street. Under the circumstances Walker, the driver of the cab, was guilty of the grossest neglience. He was driving too fast after dark on wet pavement in heavy traffic during a drizzling rain. Langley v. Viguerie, La.App., *Page 360 
189 So. 606. He failed to maintain a proper lookout and did not have his car under proper control. Broussard v. Hotard, La.App.,4 So.2d 563. He violated the following provisions of the traffic ordinance of the City of New Orleans, No. 13,702 C.C.S.
Section 2. "Any person who drives a vehicle upon a highway carelessly and needlessly in disregard of the rights or safety of others, or without due caution and circumspection, and at a speed or in a manner so as to endanger or be likely to endanger any person, or property, shall be guilty of reckless driving".
Section 3 (a). "Any person driving a vehicle shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard for the traffic, surface and width of the street and of any other conditions then existing, and no person shall drive any vehicle at such a speed as to endanger the life, limb, or property of any person".
Miss Cuccia was not guilty of contributory neglience. The contention that she left a place of safety and dashed out in front of traffic, sixty or sixty-five feet from the intersection, is not sustained by the testimony, consequently, the cases cited, Jones v. American Mutual Liability Insurance Co., La.App., 189 So. 169; Martinez v. Crusel, La.App., 148 So. 742; Vallery v. Teche Lines, La.App., 166 So. 646; Morgan v. Louisiana Rice Milling Co., 8 La.App. 77; Bridges v. Werner, La.App., 152 So. 401; Matassa v. Economy Cab Co., La.App., 158 So. 239 and Fontenot v. Freudenstein, La.App., 199 So. 677, 679, are not in point.
Miss Cuccia saw an automobile, which had been following the street car at the head of the traffic, stopped and she was justified in believing that all other cars in that line were stopped. She looked in the direction from which the taxicab approached without seeing it because, at that time, it was not visible. She could not anticipate that the cab would come from behind the line of traffic and strike her before she completed the crossing. Langley v. Viguerie, supra, and authorities therein cited.
After the accident Miss Cuccia was taken to the Charity Hospital by the driver of the taxicab, where she received medical treatment and the next day according to her mother she was treated at her home by a doctor representing the taxicab company, and thereafter by a doctor of her own choice, Dr. L.J. Hanckes, who had Miss Cuccia taken to the Mercy Hospital, where she remained from June 18th to June 24th, 1939. She was confined to her bed at home about three weeks and incapacitated for a period of three or four months. She suffered lacerations of the forehead, cellulitis of the head, abrasions and contusions of the scalp, edema and contusions of the left side of the neck and lacerations and contusions of both legs. She was left with a permanent scar on her forehead near the hairline and scars on each leg which, according to her counsel, amount to a disfigurement.
In his brief counsel for plaintiff says:
"Besides the extreme pain and suffering which she underwent, she has been left with three permanent disfiguring scars, one on her forehead and two on her legs. These alone, for an otherwise comely, unmarried young lady just entering womanhood, should form a substantial item of damages".
We have recognized as substantial items of damage disfiguring scars upon the head and face of young women because, among other reasons, such unsightly and permanent effects influence unfavorably the victim's prospect of marriage. Byrd et ux. v. Gallman, 174 La. 268, 140 So. 44; Dyess v. Landry, 15 La.App. 403, 132 So. 242 and Tessier v. Stewart, 11 La.App. 164, 121 So. 777. The scar on Miss Cuccia's forehead may well be disfiguring and within the rule announced in the cited cases, but the proof is very meagre. It is said to be near the hair line which would indicate that its unsightlessness is minimized by its location and its capacity for harm is limited. No photograph is in the record and no evidence that it is disfiguring beyond the bare statement by Miss Cuccia.
The scars on Miss Cuccia's legs, which the record informs us were exhibited to the Court below, have not been exhibited to us in any form. We do not know where they are nor how extensive. We are not prepared to say that scars on a lady's legs are not disfiguring and not compensable in damages, but so far we have not held that they were. It would appear that much would depend on the dimensions of the scars, their appearance, location and, in the language of aviation, their "visibility". However this interesting question need not be considered because there is nothing *Page 361 
in this record beyond the mere statement that Miss Cuccia has scars on her legs.
There is a claim for loss of earnings. Miss Cuccia was employed at "Al's Place" as a "carhop", that is to say, she acted as a waitress serving occupants of automobiles at her employer's place of business. She says that she was allowed $3 per week to cover carefare and lunch money, but that she received between $15 and $25 per week in tips and that as a result of the accident she was unemployed for a period of six months.
The lower court gave judgment for Miss Cuccia's account in the sum of $500. This amount seems to us to be inadequate. We will, therefore, increase it to the sum of $1,000.
The amount awarded Jake Cuccia is not contested, consequently, and
For the reasons assigned the judgment appealed is amended so as to increase the amount awarded plaintiff for the use and benefit of his minor daughter, Joyce Cuccia, from $500 to $1,000 and as thus amended, it is affirmed.
Amended and affirmed.