## MORGAN v. DOMINO.
### No. 5188.

Court of Appeal of Louisiana.
Second Circuit.
March 2, 1936.

Munholland & Munholland, of Monroe, for appellant.

Madison, Madison & Fuller, of Bastrop, for appellee.

HAMITER, Judge.

East Cypress street, which runs east and west in the city of Bastrop, is a paved thoroughfare thirty feet in width, and traverses, at right angles, the right of way and tracks of the Missouri Pacific Railroad Company at a point approximately three blocks from the courthouse of Morehouse parish. This right of way is approximately sixty feet in width. From east to west, on that street, is down grade to a point immediately east of the right of way, and from that point, traveling in the same direction, is up grade. On the north side of such street, in the vicinity of such railroad intersection, are two buildings. The Ritchie Grocery Company occupies the one adjoining the right of way on its east. The other is unoccupied, although it formerly housed a glass factory, and is approximately seventy-five feet west of the right of way. An operating ice plant is on the south side of the street and is contiguous to such railroad intersection on its west.

At approximately 1 o'clock in the afternoon of August 13, 1934, Henry J. Mor-

gan, accompanied by his brother-in-law, T. B. Tate, in returning from his work at a paper mill, walked in a westerly direction along the sidewalk in front of the Ritchie Grocery Company, on the north side of East Cypress street, and crossed the railroad tracks. On reaching a point several feet west of such right of way, Morgan and Tate proceeded to cross from the north to the south side of such street, the latter walking a short distance in front of Morgan. While attempting this crossing, Morgan was struck by a Chevrolet sedan driven by defendant, Miss Annie Domino, in a westerly direction. At the time of the accident, such defendant was passing to the left of a Chevrolet coach, proceeding in the same direction, which was being driven by Miss Gladys Montgomery. Morgan died shortly after and as a result of the accident.

Mrs. Morgan, in her individual capacity and as natural tutrix of the four minor children born of her marriage with decedent, seeks judgment herein for alleged damages, which are itemized in the petition, in the total sum of $45,000.

The judgment of the trial court rejected plaintiff's demands, and she has appealed.

Various forms and degrees of negligence are charged to defendant. In her answer, defendant denies that she was negligent in any manner, and, in the alternative, alleges contributory negligence on decedent's part.

As is usual in cases of this kind, the evidence herein is conflicting in many respects. All of the witnesses are of the white race. Plaintiff offers the testimony of four persons who claim to have seen the accident: C. P. Hall, an employee of the ice plant for two years, who was standing on the platform of such establishment, about sixty feet from and in plain view of the accident; J. C. Brazealle, aged twenty-four and a resident of Bastrop for ten years, was seated in the driver's seat of his car, parked in front of the ice house, facing north and about thirty feet from the railroad crossing; sitting beside him was his brother-in-law, Lloyd Lowery, aged twenty, who has resided in Bastrop for eight years. Brazealle and Lowery had deposited some beef in the ice house and were facing the accident and preparing to leave when the unfortunate tragedy occurred. These three witnesses were not relatives of decedent, and have no interest in the case. Plaintiff's fourth witness, T. B. Tate, a brother-in-law of the decedent, had just reached the curb on the south side of the street when his companion, the decedent, was struck. The testimony offered by defendant consisted of her own and that of Miss Gladys Montgomery, the driver of the other car, who worked in the ERA office in Bastrop with defendant's sister.

No benefit would be afforded by a detailed discussion of the conflicting evidence affecting the question of defendant's negligence. Suffice it to say that after carefully pondering all of the testimony, appreciating the interest of each witness in the case, and noting the numerous and obvious inconsistencies in the testimony of some of the witnesses, we are convinced, and the preponderance of the evidence is to the effect, that defendant was negligent. Our appreciation of such evidence is that decedent and his companion, Tate, stepped into East Cypress street on its north side, at a point several feet west of the railroad right of way, and proceeded in an angling or southwesterly direction toward the ice plant, with Tate about two feet in advance of Morgan. Miss Montgomery had begun the crossing of the tracks, traveling in a westerly direction on her right side of the street, at a moderate rate of speed, when defendant's car came from behind, overtook, and was passing, while on the tracks and on the south side of the street, the car of Miss Montgomery, at a speed of from thirty to forty miles per hour. Morgan and Tate passed in front of the Montgomery car and were on the south portion of the street when the speeding car of defendant appeared. Tate, being in front, reached the curb in safety, while Morgan was struck by defendant's car at a point from four to six feet from the south curb line and from twelve to fifteen feet west of the railroad right of way. At or about the time of the accident, defendant swerved her car to the right, the unfortunate victim was thrown into the air and onto defendant's car, and he was carried to and deposited on the north curb of the street at a location approximately forty feet from that of the accident, and almost in front of the old glass factory. The car traveled about fifteen feet farther before stopping.

■ From this state of facts, we conclude that defendant was negligent in at least two particulars. She was traveling at

a rate of speed greatly in excess of that permitted by an ordinance of the city of Bastrop, a copy of which is in the record. The maximum speed authorized under such ordinance, on East Cypress street, is ten miles per hour. Further, defendant violated the provisions of section 3 rule 7 (e) of Act No. 21 of 1932, when she overtook and was passing the Montgomery vehicle, traveling in the same direction, on the railroad crossing. This rule, which was applied in the case of Thorgrimson v. Shreveport Yellow Cabs, 161 So. 49, decided by us, reads as follows: "The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at any steam, electric or other railroad grade crossing or any intersection of the highway, unless permitted or instructed to do so by a duly authorized traffic or police officer."

Although the trial judge has favored us with no written opinion, it is apparent that he reached the same conclusion with reference to the question of defendant's negligence. Plaintiff's counsel, in his brief, asserts: "The district judge stated that there was no question of the negligence of defendant and that such was conclusively established, but gave as the sole and only reason for rejecting the demands of plaintiff that decedent was traversing a street at a point which was not a regular crossing and hence was guilty of negligence which barred recovery for his death."

Defendant's counsel received a copy of such brief, and has not disputed that assertion. On the contrary, he states that this case was decided in the trial court on the question of contributory negligence.

Passing to the alternative defense of contributory negligence, we find that no lines existed across East Cypress street at the place of the accident designating it a pedestrian crossing. No street parallels the railroad tracks or intersects East Cypress street at that point. Plaintiff's counsel, however, contends that such place is considered a regular pedestrian crossing, within the meaning and intendment of section 3, rule 11 (c) of Act No. 21 of 1932, and that Morgan had the right of way. He relies on the first part of such section, which reads as follows: "The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian lawfully crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices, in which event such traffic authority or device shall control."

Counsel for defendant claims that his client had the right of way under that section, and cites the last portion thereof, which provides: "Every pedestrian crossing a street or highway within a business or residence district at any point other than a regular pedestrian crossing, crosswalk or intersection, shall yield the right of way to vehicles upon such street or highway."

It does not appear that the intersection of East Cypress street with the right of way constitutes the end of a block, nor is it shown that a sidewalk parallels the railroad tracks, the lateral boundary lines of which could be prolonged across such street; and it is not a clearly marked crosswalk. Hence, this was not the pedestrian crossing contemplated in the first part of such section and Morgan did not enjoy the right of way by reason thereof. It is unnecessary for us to decide whether defendant possessed such privilege under the provision which she relies on, for, if she did, such was forfeited because of the unlawful and dangerous rate of speed that she traveled. Section 3, rule 11 (a) of that same act, provides: "The driver of any vehicle traveling in an unlawful, improper, reckless or dangerous rate of speed or manner shall forfeit any right-of-way which he might otherwise have hereunder."

But even if defendant had possessed such a right of way, and if we should conclude that Morgan was not crossing the street at a public crossing, defendant did not have the privilege of using such street in absolute disregard of decedent's rights.

"Under an ordinance giving to vehicles the right of way over pedestrians between regular crossings or street intersections, a motor vehicle does not have an absolute right of way, regardless of the rights of a pedestrian. * * *" 42 Corpus Juris, p. 1150.

No law or ordinance has been called to our attention, and we know of none, which prohibited Morgan from crossing East Cypress street between public crossings, and we have previously found that

defendant did not have the right of way on such street. Accordingly, if Morgan was crossing between public crossings, he was not negligent as a matter of law.

"In the absence of a restrictive or prohibitory statute or ordinance, a pedestrian has the right to cross a street or highway at any point therein, and it is, therefore, not negligence as a matter of law to cross between intersections or at a place where there is no regular crossing." 42 Corpus Juris, p. 1149.

■ It is true that a greater degree of care is required of a pedestrian when crossing a street between intersections or public crossings than when crossing at a regular public crossing or intersection. But the place where Morgan crossed may be treated and considered, in so far as this case is concerned, as a public crossing. For it is shown by the undisputed testimony of several witnesses that pedestrians customarily crossed at the point where the accident occurred. And defendant, herself, testified that employees of the paper mill located in that vicinity usually crossed such street by the railroad tracks, and that she had seen them crossing there on a number of occasions.

■ Considering defendant's knowledge that the place in question was customarily used by pedestrians as a crossing, the principle of law governing motorists and pedestrians at public crossings or street intersections, in the absence of statutes or ordinances, is applicable. This principle is that the motorist and pedestrian have equality of right in the use of the crossing, and each must exercise such right with reasonable regard for the safety and convenience of the other. Blashfield's Cyclopedia of Automobile Law, § 1272; Boston Elevated Ry. v. Greaney (C.C.A.Mass.) 68 F.(2d) 657.

■ From the evidence in the case at bar, it is apparent that decedent and Tate observed the approaching Montgomery car, as it came onto the railroad tracks, successfully passed in front of it and across the center of the street. Defendant's car was not seen by them when they started to cross for the reason that it was behind and obscured by the Montgomery car. Morgan was not bound to anticipate that a car would come from behind the Montgomery machine and attempt to pass it on the railroad right of way at an exces-sive rate of speed; particularly, where the above-quoted statute of Louisiana made it unlawful for one car to pass another, proceeding in the same direction, at the railroad crossing. And having crossed the center of the street to its south side, Morgan had the right to assume that he would not be struck by a vehicle approaching from the east. Buisson v. Potts (La.App.) 151 So. 97. Under the circumstances of this case, we conclude that decedent was not contributorily negligent, and that defendant's negligence was the proximate cause of the accident.

■ With reference to the amount of damage to be awarded, we find that plaintiff and decedent had been married, at the time of decedent's death, approximately ten years and three months, and that the ages of the four surviving children born of such union were one, five, seven, and nine years, respectively. Decedent's age was thirty-one years, and he was the sole source of support for his wife and children. He had been an employee of the paper mill for six years, and his average weekly wage at the time of the accident was $15. When he went to work on that ill-fated day he enjoyed the same good health as that prior to such time.

Death came to Morgan a few minutes after the collision, and it therefore can be said that he did not experience much suffering.

The undisputed evidence is that the funeral expenses amounted to the sum of $168.75, and were paid by plaintiff.

As has been stated by this and other courts on numerous occasions, there is no fixed rule governing the quantum of damages in cases of this character. The amount which we have decided on, however, is comparable to those awarded under the jurisprudence of this state. We think that substantial justice will be done by awarding judgment for $10,000, plus funeral expenses.

Accordingly, and for the reasons herein given, the judgment appealed from is reversed, annulled, and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of Mrs. Georgia Tate Morgan, individually and as natural tutrix of her minor children, named in her petition, and against defendant, Miss Annie Domino, for the sum of $10,168.75, with legal interest thereon from judicial

212

demand; $5,168.75 of said amount being awarded Mrs. Morgan, individually, and the remainder thereof to her as tutrix of her said minor children. Defendant shall pay all costs of this suit.