## BURRIS v HOBART MFG. CO.

Ohio Appeals, 2nd Dist, Franklin Co

No 2963.   Decided March 20, 1939

Guy R. Martin, Columbus, Phil S. Bradford, Columbus, Robert S. Miller, for plaintiff-appellant.

Arnold, Wright, Purpus & Harlor, Columbus, Earl F. Morris Richard H. LeFevre, for defendant-appellee.

(GUERNSEY, J., of the Third District, sitting by designation.)

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Franklin County directing a verdict in favor of defendant-appellee, The Hobart Manufacturing Company, at the close of the case of plaintiff-appellant, James I. Burris. The action is one for damages for personal injuries arising out of a collision between an ice truck driven by the plaintiff and an automobile driven by John H. Lahr.

The action was originally brought against The Hobart Manufacturing Company, an Ohio corporation, of Troy, Ohio, Thomas E. Russell, Robert M. Ludwig and John H. Lahr. and at the close of the plaintiff's case the plaintiff elected to dismiss without prejudice the defendants Thomas E. Russell, Robert M. Ludwig and John H. Lahr and proceed only against the defendant The Hobart Manufacturing Company, and the judgment directing a verdict in favor of the defendant, The Hobart Manufacturing Company, was entered on motion of the defendant following such election.

. It is the plaintiff's claim and the theory of his case, that at the time of the collision between the ice truck driven by him and the automobile driven by John H. Lahr by virtue of a contract in writing entered into on July 3, 1934, between the defendant, The Hobart Manufacturing Company, and the said T. E. Russell there existed the relationship of principal and agent or master and servant between said company and the said Russell, the company being the principal or master, and Russell the agent or servant; and that by virtue of a contract of employment in writing entered into between the said T. E. Russell and the said Robert M. Ludwig, under date of January 2, 1935, there existed between The Hobart Manufacturing Company and the said Ludwig the relationship of principal and agent or master and servant, said company being the principal or master and the said Ludwig being the agent or servant; and that by virtue of an oral contract of employment entered into between the said Ludwig and John H. Lahr on or about February 1, 1936, the relationship of master and servant existed between The Hobart Manufacturing Company and the said Lahr, said company being the principal or master and said Lahr being the agent or servant, and that The Hobart Manufacturing Company was accordingly liable for the acts of Lahr at the time plaintiff sustained his injuries.

The trial court held that there was no evidence establishing any relationship between Lahr and the defendant company which would impose liability on the company, and at the close of the plaintiff's evidence directed a verdict for defendant, as above mentioned.

As shown by the record in the case, The Hobart Manufacturing Company manufactures and sells electric food preparing machines of various sorts. The method of distribution is through sales agents.

On July 3, 1934, the company entered into a contract with T. E. Russell by which he was appointed district sales agent for eighteen counties including Franklin County. The contract, among other provisions, contained the following provisions relating to the duties of Russell under such employment, to-wit:

"You agree to devote your time exclusively and diligently to the business of the company in the territory above named, under the directions of its officers and representatives, and to con-

form to the rules and regulations of the company now in force, also such new and amended rules as may hereafter be adopted by the company and mailed to your address. It is understood that the remunerations hereinafter provided are based upon your agreement to devote your time exclusively and diligently to the business of the company, and that in the event you shall fail to render such exclusive service, the company may, at its option, solicit in and accept business from the said territory in such manner as it may see fit, without obligation to you for the payment of any commission on business so written."

"You agree to furnish the company with such reports of your work in your territory as it may request from time to time, and you further agree to turn over to the company or its representatives upon the termination of this contract, a complete list of probable purchasers in your territory as taken from your records, and to turn over such other reports as may have been kept in connection with your agency."

"Any officer of the company, or its authorized representatives, shall have the privilege of examining and inspecting all of your books and records incident to the conduct of your agency, for the purpose of determining whether or not the business of your agency is being carried on in a manner acceptable to your company."

The contract, among other things, further provided that Ruseell should be compensated exclusively on a commission basis; that payment for articles sold should be made by purchasers directly to the company, he, to aid in the collection if requested by the company; that he would see that necessary repairs were made to machines in his territory; that he would give a fidelity bond; that he might employ assistants for sales or office work, first submitting the name of such assistant to the company for approval and also requiring a fidelity bond of such assistant; that at

his request the commission accounts of such assistants might be carried on the company's books, but at his risk; that nothing in the contract should be construed as giving the privilege or authority to employ any one in the name of the company or for its account; and that the contract might be terminated upon notice by either party. Riders were thereafter added changing the territory and commission rates, and in this form the contract was in effect on September 8, 1936.

Russell had a display and salesroom on North High Street in Columbus where various Hobart products, which were sent on consignment, were on display. He employed an office force and on the date referred to above, had two service men in his employ, and had entered into contracts with three salesmen. One of these salesmen was Robert A. Ludwig. Russell's contract with Ludwig was written on a form furnished by The Hobart Manufacturing Company and contained, among others, the following provisions:

"You are to strictly obey all rules and regulations of my Employer-Company to which I am subject, as far as they may extend to your acts as my employee, to the end that your acts as my employee, and your employment by me, may not hinder nor embarrass me in the fulfillment of my duties and obligations to my Employer-Company."

"Your acceptance of this proposal, by your signature below, shall make this a contract between us. Same shall be terminable upon written notice by either party mailed to or delivered at the last known address of the other, or upon the termination of my contract with my Employer-Company applying to the aforesaid territory."

The contract contained other provisions to the effect that Russell employed Ludwig to assist him, as provided in the contract, as directed in the Columbus territory; that he should be compensated on a commission basis (the compen-

sation being less than those provided in Russell's contract, thus giving Russell an over-write); that his commission in exchange of machines or chain store sales should be fixed by Russell; that Russell should advance him seventy per cent of his prospective commissions, and that Russell alone should be liable for payment of commissions; that as a matter of accommodation, The Hobart Manufacturing Company would keep Ludwig's commission account, but such accommodation should not involve the company in contractual relations with Ludwig; that there should be no privity between Ludwig and Hobart; that Ludwig should assist in making collections and repairs on machines; that he should make reports, upon request, to Russell and make remittances to him; and that the contract was terminable upon notice.

Sales were made by both Russell and Ludwig on conditional sales contracts and delivery was usually made by them. When made by Ludwig the contracts and any down payment were turned into Russell's office, and commission checks were sent by The Hobart Company to Russell for delivery to Ludwig.

Ludwig was engaged in selling Hobart products in Franklin county. The products sold would range in weight from sixty pounds up to close to one thousand pounds and that this variation of weight was made up of approximately fifteen different types of machines, and included grinders, slicers, potato peelers, food cutters and air whippers of which the weight varied from sixty to a thousand pounds.

For the year during which the collision complained of occurred The Hobart Company had assigned to Russell a personal quota of $18,000.00 and a district quota of $46,519.00.

Because of the nature of the business it was contemplated by The Hobart Manufacturing Company that salesmen such as Ludwig would have an automobile or some sort of transportation but they were never ordered to have nor was any report in this regard ever requested.

Russell met John H. Lahr in January, 1936, when he sold Lahr's mother some Hobart equipment. In the course of the conversation Lahr asked about the possibility of employment and Russell told him that should there be an opening in his agency or it he heard of any position anywhere he would do what he could for him. Later, Ludwig wanted a man to help him. Russell suggested Lahr and went with Ludwig to Lahr's home and introduced him. Ludwig told Lahr he wanted someone to help him drive his car, handle the machines, assist in demonstrations "or anything I may have" and that by doing this and studying he could train himself for a job similar to Ludwig's. Ludwig then on February 1st, 1936, hired Lahr at a salary of ten dollars per week, and expenses when they were away from Columbus. Thereafter until and including the date of the accident which occured September 8, 1936, Lahr was in Ludwig's employ, did the things outlined above, and was paid by Ludwig out of his personal funds.

On the day of the accident Ludwig was out of town and Lahr, with Ludwig's permission, had taken the automobile to make calls on certain persons Ludwig and he had formerly called upon. While enroute to the place of business of one of them the accident occurred.

The car which Lahr was driving at the time of the accident was designed expressly for the hauling and demonstrating of Hobart products.

When Lahr was in the city and not out in the field working. he spent his time at the Russell store studying books, uncrating machines sent from The Hobart Manufacturing Company, making minor repairs on machines and getting acquainted with them.

There is no evidence that the Hobart Company had actual knowledge of the employment of Lahr.

The sole question raised by the appeal in this case is whether there is any substantial evidence tending to prove that Lahr's relationship to the defendant company at the time of the

collision was such as to impose liability upon it for his negligent acts, that is such a relationship as would make applicable the doctrine of respondeat superior. If there is such evidence the trial court erred in directing a verdict in favor of the defendant. On the other hand, if there is not such evidence the verdict was properly directed.

It is apparent that the answer to this question depends upon the evidence of the successive relationships of Russell, Ludwig and Lahr to each other and their respective relationships, if any, to The Hobart Manufacturing Company.

The contracts between Hobart and Russell and between Russell and Ludwig were written. The contract between Ludwig and Lahr was oral but there is no dispute as to its terms.

There is no conflict in the testimony as to any of the circumstances surrounding the relationship of any of the parties. What the various relationships were was therefore a question of law for the court.

We will first consider the relationship arising from the oral contract between Ludwig and Lahr, for this purpose assuming but not deciding that by virtue of the written agreement between Russell and Ludwig The Hobart Company stood in the relationship of principal or master to Ludwig as its agent or servant in his capacity as a salesman.

As the said agreement between Russell and Ludwig did not expressly authorize Ludwig to hire assistants, servants or agents, whatever authority, if any, Ludwig had to hire Lahr is to be determined from the following rules:

"Unless otherwise agreed a servant is not authorized to permit or employ another to perform acts of service which he is authorized to perform.

"A servant is an agent employed to render service whose physical conduct is subject to the control or right to control of the principal. Such person ordinarily has no power to substitute another in the performance of service which it is his duty to render .* * *, a servant employed to perform manual work ordinarily has no authority to direct or permit another to perform it, either as a servant, as an independent contractor or as servant of the master. Since the master is responsible to third persons for torts of a servant in the scope of employment, in the situations in which a servant is authorized to secure assistance ordinarily he would be authorized to employ only a person who becomes his servant or an independent contractor, and not a servant of the master."

"Restatement of the Law of Agency, Volume 1, page 193-194, Section 81 and comment a.

"Unless otherwise agreed, authority to appoint a sub-agent is inferred from authority to conduct a transaction for the principal for the performance of which the agent is to be responsible to the principal if:—

(a). the authorized transaction cannot lawfully be performed by the agent in person;

(b). the agent is an association or has an organization the employees of which normally perform such transactions;

(c). the business is of such a nature or is to be conducted in such a place that it is impracticable for the agent to perform it in person;

(d). the appointment of sub-agents for the performance of such transactions is usual, or there has been a usage between the principal and the agent permitting it; or

(e). an unforseen contingency arises in which it is impracticable to communicate with the principal and in which such an appointment is necessary in order to protect the interests of the principal entrusted to the agent."

Restatement of the Law of Agency, Volume 1, page 191, Section 80.

And as supporting all the rules above, see 2 Mechem on Agency, Second Edition, Section 1866; and **Dairy Company v Briggs, 131 Oh St 261 at page 265,** where such rules are set out in condensed form.

We will not consider the facts shown by the evidence, in the light of the rules mentioned.

Ludwig's employment was that of a salesman; the authorized transaction, to-wit, the sale of merchandise and acts incidental thereto in behalf of his principal including the acts performed by Lahr, could have lawfully been performed by Ludwig in person; he was not an association and did not have an organization, the employees of which normally performed such transactions; the business was not of such nature nor was it to be conducted in such a place that it was impracticable for him to perform it in person; the appointment of sub-agents for the performance of such transactions was not usual, and there had been no usage between the company and him permitting it; and no unforseen contingency arose in which it was impracticable to communicate with the company and in which the appointment of Lahr as sub-agent was necessary in order to protect the interests of the company entrusted to Ludwig; so no state of facts existed from which authority in Ludwig to employ Lahr as sub-agent or servant of the company might be inferred.

There being no express authority in Ludwig's agreement with Russell and no state of facts existing from which authority in him to employ Lahr as sub-agent or servant of the company might be inferred, Ludwig was not, under the rules mentioned, authorized to permit or employ Lahr to perform acts of service which Ludwig was employed to perform; and even if a state of facts had existed from which it might be inferred that Ludwig as the agent or servant of the company had authority to employ Lahr such authority, unless the inference from such state of facts necessarily comprehended greater authority, would have been limited to the employment by Ludwig of Lahr as his servant.

The relationship of agent of an agent or servant of a servant is recognized by law. Mechem on Agency, Second Edition. **Dairy Company v Briggs, 131 Oh St 261.** It is also established that the consent of a principal to the employment of a sub-agent may be limited to the appointment of the sub-agent as agent of the agent and not of the principal. Texas Company v Brice, 26 Fed. (2d) 164 (C.C.A. 6th, 1928.) Sinclair Refining Company v Beal, 181 S. E. 705 (Ga. 1935). Sams v Arthur, 133 S. E. 205 (S. C. 1926). Union Casualty & Surety Co. v Gray, 114 Fed. 422 (C.C.A. 3d, 1902).

An assistant so employed by a servant cannot, by his negligent act, impose tort liability upon the servant's master. Weatherman v Handy, 198 S. W. 458 (Mo. 1917). Copp v Porodio, 157 A. 229, (Me. 1931). Jesukivich v LaPorte, 196 A. 275 (N. H. 1938). Pullen v Faulkner, 117 S. W. (2d) 28 (Ark. 1938). Scheving v Challiss, 102 S. W. (2d) 477 (Tex. 1937). Gulf Refining Co. v Shirley, 99 S. W. (2d) 613 (Tex. 1936). Jones v Mutual Creamery Co. 17 P. (2d) 257 (Utah, 1932). Brisson v Potts, 151 So. 97 (La. 1933). White v J. E. Levi & Co. 73 S. E. 376 (Ga. 1911).

The evidence in this case all tends to prove (and there is no evidence tending to prove the contrary) that Lahr was employed by Ludwig as his servant and not as the servant of The Hobart Company; Lahr was not authorized to enter into contracts for the company on his own account; if he made any sales they were to be credited to Ludwig; he has no commission account with the company; he gave no bond; and he was paid by Ludwig out of Ludwig's own funds. All of his duties were outlined when he was hired and all the work he did—driving, helping with machines, assisting with demonstrations and sales—was under the direction and supervision of Ludwig and was work for Ludwig.

The mere fact that the company benefitted indirectly from Lahr's work

for Ludwig did not tend to establish the relationship of master and servant between the company and Lahr, for the law recognizes the existence of the relationship of servant of a servant and such relationship could not exist if aid to a servant indirectly benefitting the master established the relationship of master and servant between such master and the person furnishing aid to the servant.

The fact that Russell had express authority to hire assistants did not confer any authority on Ludwig to hire assistants as Ludwig's contract with Russell did not contain any provisions giving him such authority. And the further fact that Russell was present and acquiesced in the hiring of Lahr by Ludwig did not either expressly or impliedly constitute a hiring by Russell on behalf of his principal, The Hobart Company, as under the terms of the oral contract between Ludwig and Lahr, Lahr was employed by Ludwig and not by Russell for the purpose of aiding Ludwig as his servant and not as the servant of Russell or The Hobart Company; and the acquiescence or consent by Russell to the employment was as a matter of law limited to the terms of the employment, which as above stated, was that of a servant by a servant.

Whether the company, by reason of the knowledge of Russell or by reason of the length of time of Lahr's service, had constructive knowledge of Lahr's employment is immaterial as the employment was that of a servant of Ludwig, and notice to the company of such fact would not change the status of Lahr's employment or impose liability on the company for his negligent acts.

We are aware that this conclusion is in apparent conflict with the decision of the Supreme Court in the case of The Cloverdale Dairy Company v Briggs, an infant, 131 Oh St 261, supra.

This case involved the right of a minor who accepted employment from a servant of a dairy company to assist him in the performance of his duties, to recover for injuries sustained by him through the negligent operation of a milk truck of the dairy company which the servant of the dairy company was operating and in which the minor was riding in the course of his employment by the servant. The court held that in view of the length of time, about six weeks, the plaintiff was thus employed by the servant it was a question of fact for the determination of the jury whether he was in the employe of the master dairy company as the servant's assistant by sufferance, or whether he was merely the servant's servant.

The plaintiff's right to recover was wholly dependent upon the question whether upon the facts of the case such a state of privity existed between him and the dairy company that it owed him a duty to exercise care for his safety.

The decision in the case constitutes an exception to the general rule hereinbefore mentioned, and constituting an exception it is to be considered as confined to the facts and type of action directly involved.

The case at bar differs from the case mentioned in that it involves the right of a third party, not in privity with either the master, servant or servant of the servant, to recover from the master for the negligent acts of a servant of a servant of such master, and consequently the decision mentioned is not applicable to the case at bar.

There being no evidence tending to prove the relationship of principal and agent or master and servant existing between Lahr and the Company, making the doctrine of respondeat superior applicable, it was and is unnecessary to determine the relationship existing between the Company, Russell and Ludwig, and the trial court properly directed the verdict in favor of de-

fendant and its judgment will be affirmed at costs of appellant.

HORNBECK, PJ, and BARNES, J, concur.