## MURPHY v. HARTLEY et al.*
### No. 4353.

Court of Appeal of Louisiana. Second Circuit.
Dec. 16, 1932.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

DREW, J.

Plaintiff instituted this suit to recover for damages to his automobile growing out of a collision between his automobile, driven by his wife, and the automobile of C. P. Hartley, driven by his daughter, Elizabeth Hartley. He alleged that on October 3, 1931, at approximately 5:30 p. m., his automobile was traveling east on Stubbs avenue in the city of Monroe, when it was run into and struck by the car of defendant, which was traveling north on North Sixth street. He alleged the accident occurred in the intersection of these two streets. He further alleged that the driver of his car, on approaching the intersection, brought the car to a stop and looked both north and south on North Sixth street for on-coming traffic, and, seeing none, proceeded to cross, and when about three-fourths across the intersection, his car was run into and struck by defendant's car. He alleged that defendant's car was traveling 45 miles per hour, in violation of an ordinance of the city of Monroe, and that the driver of defendant's car was not keeping a proper lookout, and that these acts of negligence on the part of Elizabeth Hartley were the cause of the accident. He prayed for judgment in solido against the owner of the car and Elizabeth Hartley, the driver of the car, in the sum of $415.30, consisting of the items of $315.30, cost of repairing the car, and $100 for loss of use of the car for 20 days.

Defendants admitted the accident as alleged, denied the charges of negligence made against them, and averred that plaintiff's car was slowed down before entering the intersection and that defendant expected it to come to a stop, or for the driver to place it under control, as North Sixth street is a right of way street; that defendant's car was in full view of the driver of plaintiff's car; that, after slowing down the car, it was again speeded up, thereby causing the collision at about the center of the intersection. They averred the collision was caused solely by the gross negligence of plaintiff's driver in not obeying the ordinance of the city of Monroe with reference to operating automobiles; that, after plaintiff's car had slowed up, defendant believed and had a right to believe that the driver of plaintiff's car was going to permit defendant's car to cross the intersection.

Defendant reconvened and prayed for damages for Elizabeth Hartley in the sum of $1,014, for injuries received and ambulance and hospital bills, and for C. P. Hartley in the sum of $201.50 for damages to his car and expense of hospital and medical bills paid by him for treatment of his wife, a passenger in the car, and who was injured.

The lower court rendered judgment for plaintiff in the sum of $263.65 for damages to the automobile, and rejected the reconvention demands of defendants. From this judgment defendants have appealed, and plaintiff has answered the appeal praying that the judgment be increased to the amount sued for.

*Rehearing denied January 19, 1933.

North Sixth street, which runs north and south, is 27 feet wide, and Stubbs avenue, running east and west, is 30 feet wide. The intersection is the space common to intersecting streets where they join, and not the point where the paths of two automobiles approaching the intersection would cross each other. Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3-4, p. 240.

This includes the space in the two streets from where the curb begins to curve on one side to the same point on the other and, according to the map filed in evidence, drawn to a scale of one inch equaling 5 feet, we find the width of the intersection, east and west, is practically 50 feet and the width north and south is practically 55 feet. From the inside of the sidewalk line on the west side of Stubbs avenue, the point closest to the street, where one would stop and look for approaching traffic, to the sidewalk on the west side, is 56 feet, and to a point in the intersection to where one crossing the intersection would be out of the path of any one traveling north on North Sixth street is practically 45 feet. The collision was at a point in the southeast corner of the intersection, as testified to by all witnesses.

Mrs. Murphy, the driver of plaintiff's car, and her companion, Mrs. Harper, who was in the car with her, fix the point of collision from 8 to 10 feet east and south of the center of the street. All other witnesses fix it even farther east and south of the center of the street, with the exception of Miss Elizabeth Hartley, who fixed the point of collision east of the center of the street, but north of the center. Mrs. Hartley, who was in the car with her daughter, Elizabeth, first fixed the point of collision 25 feet east of the center of the street and nearly out of the intersection into the east end of Stubbs avenue. She later changed her testimony, and finally said she did not know exactly where the collision occurred.

Plaintiff's car had to travel 45 feet from the time it entered the intersection to clear the path of defendant's car, and the shortest distance any witness claims it had traveled, according to the designated place of the collision on the map, is 35 feet. In other words, plaintiff's car had to travel, after entering the intersection, practically three-fourths of the distance necessary to clear the path of defendant's car. This is figured from the front end of the car, which would have made the back end of the car near the center of the intersection. On the other hand, defendant's car, after entering the intersection, had traveled about 20 feet and, at the most, not over 25 feet, before reaching the point of collision. If both cars had been traveling at the same rate of speed, it would necessarily follow that plaintiff's car had entered the intersection and was 10 to 15 feet in the intersec-

tion before defendant's car entered it. But the evidence does not show they were traveling at the same rate of speed.

Miss Elizabeth Hartley, the driver of defendant's car, testified that plaintiff's car was traveling about 15 miles per hour when it arrived at the intersection, that it slowed up at the intersection, then started up again, and that defendant's car was traveling 25 miles per hour and continued at this speed. If this can be taken as true, by simple calculation we find that, at the time plaintiff's car entered the intersection, defendant's car was 38 feet from the intersection and 58 feet from the point of collision, provided plaintiff's car continued at 15 miles per hour, which is not the evidence.

Plaintiff slowed up nearly to a stop, put her car in first gear, then proceeded across, and had just changed to second gear when the collision occurred. The testimony is that plaintiff's car was traveling about 8 miles per hour, which, if holding defendant was only traveling 25 miles per hour, would have made defendant's car 85 feet from the intersection when plaintiff entered the intersection. We do not find the speed of defendant's car to have been 25 miles per hour, as the preponderance of the testimony is to the effect that it was much faster, and which testimony is borne out by the physical facts.

Miss Elizabeth Hartley testified that when within 60 feet of the intersection, traveling at 25 miles per hour, she saw plaintiff's car 60 feet from the intersection, traveling 15 miles per hour; that plaintiff's car slowed up, then started up again and the collision occurred. Plaintiff's car, traveling at 15 miles per hour, would have had to travel 95 feet to 105 feet, while defendant's car, at 25 miles per hour, was traveling 80 feet. This is impossible. Her testimony as to the place of collision is likewise out of line with that of any other witness. Mrs. Hartley testified that, when defendant's car was one-half a block (150 feet) away from the intersection, she saw plaintiff's car within 15 feet of the intersection, which we think is more nearly correct.

Without a complete review of the testimony, which covers nearly 300 pages, it is enough to say that the preponderance of the testimony is to the effect that defendants were exceeding the speed limit of 25 miles per hour and were traveling not less than 35 miles per hour, and that, when plaintiff's car entered the intersection, defendant's car was at least one-half a block away from the intersection. It is clearly established that defendant's car struck plaintiff's car on the right side near the front wheel. The front wheel was broken down and plaintiff's car was pushed or dragged up North Sixth street in the direction defendant was traveling, a distance of about 30 feet. Defendant's car continued on

over the curb and the neutral ground, through a yard, and back into the street, before it was stopped, a distance of nearly 70 yards north of the point of collision.

■ Miss Elizabeth Hartley says she was knocked away from the wheel and was so dazed she could not stop the car until at this point. She does not claim to have given the car any more gas after the impact. It strikes us that the impact, and the fact that plaintiff's car was dragged for 30 feet, would have been sufficient to stop the car of defendant, unless it was traveling at a very fast pace; both cars being of practically the same weight. Plaintiff's car, having entered the intersection at a time when defendant's car was at least half a block away from the intersection, clearly was entitled to the right of way whether on a favored or unfavored street, and it was the plain duty of defendant to have brought her car under control and stop it, if necessary to prevent a collision with plaintiff's car.

In the case of Hamilton v. Lee, 144 So. 249, 254, not yet reported [in State report], this court said: "Plaintiff's car reached the intersection first and was entitled to the right of way. The law required the driver of defendant's car to bring her car to a stop and let plaintiff's car pass. Plaintiff had the right to assume that defendant would observe the law and not drive into plaintiff's car."

Defendants urge they were on a right of way street and were therefore entitled to the intersection. Any regulation of this character comes into application only when both vehicles are approaching the intersection at approximately the same time and under such circumstances as to make it reasonably necessary that one yield the right of way to the other. If there is no car on the favored street near enough to demand the right of way, when traveling at a speed not unlawful, the regulation has no application. Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3–4, p. 262.

■ One cannot, by violating the speed law, acquire a right he would not otherwise have. The right of a motorist on a favored street to assume that an automobile on an unfavored street will be brought to a stop before entering the intersection, does not permit him to disregard traffic regulations or to claim the right of way when too far from the intersection to be entitled thereto. Accordingly, he is entitled to the right of way only in case his car is traveling at a lawful rate of speed. Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3–4, p. 264.

■ If the vehicles do not reach the area of the intersection simultaneously, the right of way depends upon their relative positions, their relative distances from the intersection, and their relative speed. The regulation of one street being made a favored street by ordinance does not prohibit a vehicle on an unfavored street from attempting to cross, merely because a vehicle is in view on the favored street. It does not compel a driver approaching from the unfavored street to stop if the other vehicle is too far away to reach the intersection until he has crossed. He is not required to stop to look the entire length of the street nor to watch for distantly approaching vehicles to pass. Failure to properly estimate speed of distantly approaching cars does not of itself constitute negligence. Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3–4, pp. 270, 271.

Mrs. Murphy testified that she was driving east on Stubbs avenue, and that, as she approached the intersection, she was traveling about 15 miles per hour. Upon reaching the intersection, she brought her car nearly to a stop and looked down North Sixth street, nearly a block, and saw no car approaching. She proceeded to cross at the rate of about 8 miles an hour, and, when about the center of the street, she heard the roar of a motor, and, looking up, she saw defendant's car coming straight toward her, a distance of 50 feet from her. Mrs. Harper, who was in the car with her, said when they were about the center of the intersection she heard the roar of a motor and looked up and saw defendant's car about 50 feet from them. This testimony, we think, is in line with the physical facts of the case. Mrs. Murphy could have seen much farther down North Sixth street if she had stopped in the edge of the intersection, but she was under no legal obligation to do other than she did. The city ordinance did not require her to come to a stop at this intersection, and the law did not require her to look farther down the street than she says she looked.

In the case of McDonald v. Stellwagon, 140 So. 133, 136, this court said: "It is argued that Gilbert did not look when at the right place to look. We think he did. He was not required to drive into the edge of the intersection and then stop and look. He looked from a point where he could see for at least half a block and knew he could traverse the intersection before anyone who was farther off, and who was observing the speed laws, could arrive at the intersection."

Mrs. Murphy testified that, after she looked down North Sixth street nearly a block and saw no car, she felt perfectly safe in crossing and proceeded. She was justified in feeling safe, and any prudent cautious person would have felt safe under like circumstances.

■ If defendant had observed the speed laws of the city of Monroe, plaintiff's car would have traversed the intersection before defendant's car arrived at it. Plaintiff was in no way negligent, and the proximate cause of the accident was the negligence of the driv-

er of defendant's car in speeding, in not bringing her car under control, and not slowing down at the intersection in order to allow plaintiff to pass.

The lower court awarded damages to plaintiff for an amount necessary to replace his car in as good condition as before the accident. There are several estimates by mechanics offered by plaintiff and defendant. The lower court accepted the lowest estimate of any mechanic offered by plaintiff, which is higher than that offered by defendant. We have reviewed this part of the testimony carefully, and cannot say there is any error in the finding of the lower court on this point.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.

McGREGOR, J., dissents.