### SWEENEY et al. v. NEW ORLEANS PUBLIC SERVICE, Inc., et al.*

### No. 16953.

Court of Appeal of Louisiana. Orleans.

Nov. 28, 1938.

Wm. H. Talbot, of New Orleans, for appellant Employers Liability Assur. Corporation.

Alvin R. Christovich, of New Orleans, for appellant New Orleans Public Service, Inc.

*Rehearing denied Jan. 10, 1939.

O'Keefe, Davison & Granzin, of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit for damages due to physical injuries sustained by Carolyn Sweeney as a result of a collision between an automobile and a bus, which occurred on the 15th day of January, 1937, at the intersection of St. Ann and Burgundy Streets in the City of New Orleans. A. Neil Sweeney sues for $53 as medical expenses, his daughter being a minor at the time of the accident, and Carolyn Sweeney sues for $5,000. The New Orleans Public Service, Inc., the owner of the bus and the Employers Liability Assurance Corporation, the alleged insurance carrier of Claude F. Kammer, in whose automobile Miss Sweeney was a guest at the time of the accident, are made co-defendants.

It is alleged that the accident was due to the joint negligence of the driver of the automobile and the driver of the bus.

There was judgment below in favor of A. Neil Sweeney in the amount prayed for and in favor of Carolyn Sweeney in the sum of $500. Both defendants have appealed.

The defense, as presented below by both defendants, consisted in a denial of the negligence of the respective drivers of the bus and the automobile and the alternative plea of contributory negligence. In this Court, counsel for the Employers Liability Assurance Corporation in his printed brief and in oral argument contends that there is no proof in the record to justify a holding that it is responsible for the negligence of Claude Kammer, the driver of the automobile in which Miss Sweeney was a guest at the time of the accident. In other words, it is argued that there is nothing to show that the Kammer car was covered by the defendant insurance company when operated by Claude F. Kammer. Counsel asserts that as a matter of fact, the defendant insurance company had issued a policy covering the Kammer automobile in the name of Edward W. Kammer, father of Claude Kammer and that in that policy there is an omnibus clause which would cover it when operated by Claude Kammer, the son, if it had been shown that the car was used with the consent of the owner, Edward W. Kammer. Counsel is frank enough to say that as a matter of fact, Edward Kammer had given his consent to Claude Kammer and that he had made an admission to that effect in another suit growing out of this accident, but that in this case no admission was made or sought by counsel for plaintiffs and that since the record is barren of any proof of the permission of Edward Kammer, there is no proof of coverage under the policy sued on. Plaintiffs alleged in paragraph 17 of their petition:

"* * * that at the time of the said collision, said owner and operator of the said automobile, Claude F. Kammer, had in full force and effect policy of insurance against liability, written in this state, and petitioners allege upon information and belief, that the Employees Liability Assurance Corporation would indemnify Claude F. Kammer, or other authorized drivers of the said automobile for any liability which might be incurred in the operation of the said automobile through injury to a third person. That petitioners are entitled to bring this action directly against the Employees Liability Assurance Corporation, under the provisions of Act 55 of the Legislature of the State of Louisiana, for the year 1930, and under said Act and as amended."

To this paragraph of plaintiffs' petition, the defendant insurance company replied:

"Respondent denies the allegations of paragraph 17 of plaintiff's petition other than to state that the said policy speaks for itself and that the policy in question under which they claim liability will be produced on the trial of this case."

■ On the trial of the case, counsel for the plaintiffs called for the production of the policy, whereupon counsel for the insurance company stated that he did not have the policy in his possession but admitted that "there was an insurance policy" and agreed to produce it later. Counsel for plaintiffs then offered the policy, relying upon opposing counsel's agreement to produce it. This is all that the record shows as the policy was not again referred to during the progress of the trial which was conducted by the plaintiffs and defendant by the insurance company as though the sole issue was the negligence vel non of Claude Kammer, the driver of the automobile. The policy was not produced or, at least, it is not in the record, for there is a dispute between the attorney for the insurance company and the attorney for plaintiffs concerning the delivery of the policy in open court, such delivery being affirmed by one

and denied by the other. We take the situation, however, as we find it reflected by the record. As we have pointed out plaintiffs allege in paragraph 17 of their petition that the defendant insurance company had issued a policy covering the operation of the car by Claude F. Kammer and that this allegation is denied by the defendant insurance carrier, but the denial is coupled with an admission "that the policy in question under which they claim liability" which "speaks for itself * * * will be produced on the trial of this case". This is a qualified denial which amounts to an admission that "the policy in question" was issued by defendant and this fact taken in connection with the admission of counsel upon the trial of the case that "there was an insurance policy" and his agreement and failure to produce it, as well as his failure to urge any defense in his answer or upon the trial of the case below to the effect that there was no coverage under the policy, must be considered as a waiver of the defense of unauthorized use of the automobile, raised for the first time in this Court, and counsel will not be heard now to say that the policy which he failed to produce does not cover the automobile when driven by Claude Kammer or that there has been a failure of necessary proof in that regard.

On the night of the accident, Claude F. Kammer, Mr. Childress, Miss Carolyn Sweeney and Miss Thelma Gelpi, a group of young people, were riding in the Kammer car. Mr. Kammer, who was cast in some role in a performance to be presented at the "Little Theatre", which is situated on St. Peters Street near Charters, left his companions about 8 p. m. to attend a rehearsal. The other three occupants of the car drove around town and amused themselves according to their inclination until 10:30 when they called for Mr. Kammer at the "Little Theatre". When Mr. Kammer joined the party he took the driver's seat and operated the automobile, the destination of the party being undetermined, there being a discussion as to what form of entertainment the remainder of the evening would be devoted to, which was not settled at the time of the accident. Mr. Kammer, however, drove out St. Ann Street with the intention of going beyond the intersection of that street with Burgundy. He says he was traveling at the rate of twenty-five miles per hour. Mr. Childress, who was in the rear seat with

Miss Sweeney, Miss Gelpi being in the front seat with Mr. Kammer, estimated the speed of the car as twenty miles per hour, Miss Gelpi as between thirty and thirty-five miles and Miss Sweeney as between twenty-five and thirty miles per hour. Other witnesses estimated the speed of the Kammer car as high as forty-five miles per hour. According to Kammer's own admission, however, his speed was excessive, for Section 3 of Article V of the Traffic Ordinance No. 13,702, C.C.S., declares that in approaching a blind corner the speed of a motorist should not exceed fifteen miles per hour. Kammer says he did not see the bus until just before he struck it on its right side near the rear door. He should have seen it for it was in plain view. The negligence of Kammer is, we think, obvious, so much so that his counsel, or we should say, the counsel for the insurance company, conceded primary negligence on his part in the oral argument of the case, relying solely upon the alleged contributory negligence of Miss Sweeney and the technical defense which we have discussed. We conclude, therefore, that Kammer's negligence was a factor in the accident.

Since the defense of contributory negligence is raised by both defendants, we will pretermit its discussion at this time and take up the question of the alleged negligence of the New Orleans Public Service, Inc., the owner and operator of the bus with which the Kammer car collided. The charges of negligence imputed to the driver of the bus are excessive speed and the failure to keep a proper lookout. So far as the speed of the bus is concerned, there is little to support this contention, the overwhelming weight of the evidence being to the contrary. Only Miss Gelpi and Mr. Childress testified that the speed of the bus was excessive, Miss Gelpi in an indirect manner by saying that she thought both vehicles were going the same speed, and Mr. Childress, who placed the speed of the bus at about twenty-five miles per hour. As against this testimony, Edward A. Willie, the driver of the bus, and several passengers in the bus assert that the speed was very moderate. Willie testified that he had been driving down Burgundy Street in the direction of Esplanade Avenue at about fifteen miles per hour and that he slowed up as he reached the St. Ann intersection, making a "safety stop", by which he means to say that he slowed down to a speed of between eight and ten miles per hour; that

when the front of his bus was about five feet from the property line of St. Ann Street, he looked out St. Ann Street in the direction from which the Kammer car was approaching and saw no vehicle in sight; that he then proceeded to cross St. Ann Street, picking up speed and reached a point when the front end of his bus, which is twenty-eight feet long, had entirely crossed the intersection, when the bus was struck violently in the rear by Mr. Kammer's automobile, knocking it sidewise and against the curb on the lower or Esplanade Avenue side of St. Ann Street. Willie is corroborated by Mrs. Joseph Molaison, Frank Sciaccia, Thomas Kelly, Elmer Pettit, and Miss Margie Watkins, passengers in the bus.

■ The main reliance of the defendant Public Service Company is upon the doctrine of preemption of the intersection. Under the traffic ordinance neither Burgundy nor St. Ann Streets is given the right of way, however, the Kammer car since it was approaching the intersection from the right had the right of way. Article VI, Section 10, Traffic Ordinance No. 13,702 C.C.S. The fact that the Kammer car had the right of way is immaterial, however, if the bus had, in fact, preempted the intersection. Vance v. Poree, 5 La.App. 109; Murphy v. Hartley, La.App., 2d Cir., 144 So. 785; Bethancourt v. Bayhi, La.App. Orleans, 141 So. 111, 114. From the last cited case we quote the following:

"The evidence convinces us that Mrs. Cox's car, which was crossing slowly, had almost reached the other side of the street, when it was struck, and that, thus, there is involved the principle which, in Smyth v. Hill Stores, Inc., 8 La.App. 246, was set forth in the syllabus as follows:

" 'Where two automobiles approach an intersection at a right angle, and one of them nearly completes the crossing before the other arrives at the intersection, the one which almost traverses the intersecting street is entitled to proceed, notwithstanding the fact that the other car had the right-of-way.' "

■■ It is said that Willie was negligent in that after looking to the right and seeing no traffic approaching the intersection, he failed to look again in that direction. We do not believe it was his duty to do so. If he looked, as he says and as we believe he did, and he saw no traffic near enough to reach the intersection at a lawful rate of speed, he was not obliged to look again and could rely upon vehicles at a greater distance respecting the law concerning speed. Hamilton v. Lee, La. App., 144 So. 249; Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 2, Permanent Edition, § 1038; Berry on Automobiles, 6th Edition, Vol. 1, Section 1049; Huddy's Encylopedia of Automobile Law, 9th Ed. Vols. 3–4, page 230. An expert surveyor, at the request of the defendant Public Service Company, visited the scene of the accident and made measurements with a view of determining how far out St. Ann Street traffic could be seen from a point on Burgundy Street where the bus driver claims to have looked for approaching traffic. According to the testimony of Mr. Gilbert, the surveyor in question, when the front end of the bus was five feet from the property line of St. Ann Street, the driver, who was seated almost seven feet further back, could see between seventy and eighty feet out St. Ann Street. At this distance, Willie was justified in believing that it was safe for him to cross the intersection, there being nothing in his range of vision to obstruct his passage or with which he might reasonably expect to collide. We conclude, therefore, on this point that the bus had preempted the intersection at a lawful rate of speed and that its driver was not negligent.

■ The basis of the plea of contributory negligence is the fact that the occupants of the car, including the driver and the plaintiff, were engaged in a conversation relative to where and how the remainder of the evening which was to be devoted to pleasure should be spent. We know of no authority sustaining this point and on our own account we do not believe it to be negligence for the occupants of an automobile to engage in a general conversation. The automobile is largely devoted to the transportation of individuals on pleasure bent and we see no reason why the host and his guest should refrain from conversation upon pain of being held negligent in the event of an accident. There is no contention and no proof that the driver turned his head toward the side or rear of the automobile and away from the roadway he was traversing. Miss Gelpi, one of the young ladies in the automobile, protested against the speed at which Kammer was driving the car, saying in effect that as much as she enjoyed his company, she preferred "to get home all in one piece".

This protest was made in the hearing of Miss Sweeney and there was no necessity for her to repeat it if it be considered necessary that a protest should be made. We find no merit in the plea of contributory negligence.

As to the quantum, the allowance for medical expenses to A. Neil Sweeney is not contested. It is said, however, that the $500 allowed for physical suffering is excessive. Miss Sweeney's knee was injured, causing it to have a certain lateral motion when she walked. She was confined to her bed for a considerable period of time and while her injury was not permanent it was painful and she was more or less disabled for over a year. We do not believe the allowance of $500 to be excessive.

For the reasons assigned the judgment insofar as it runs against the New Orleans Public Service, Inc., is annulled, avoided and reversed and it is now ordered that there be judgment in favor of the New Orleans Public Service, Inc., dismissing plaintiffs' suit. In all other respects the judgment appealed from is affirmed.

Reversed in part; affirmed in part.